G. L. TURNER, Appellee, v. G. M. BRADLEY, Sheriff, *et al.*, Appellants.

Agency: DECLARATIONS OF AGENT: EVIDENCE. Where an agent in possession of a stock of merchandise was given exclusive management and control of the business, *held*, that proof of his declarations to third persons, wherein he claimed to be the owner of the property, was admissible in evidence against the principal in an action wherein the rights of creditors, who had sold goods to the agent, were in issue.

*Appeal from Taylor District Court.*—HON. R. C. HENRY, Judge.

MONDAY, MAY 23, 1892.

THE defendant, Bradley, is the sheriff of Taylor county, and, by virtue of an execution issued on a judgment in favor of M. Reigleman & Co. v. N. J. Turner, he levied on and took into his possession, part of a stock of goods as the property of N. J. Turner. The plaintiff, a son of N. J. Turner, brings this action to recover the possession or value of goods taken as belonging to him. M. Reigleman & Co. were, on their own motion, made parties defendant, and deny the ownership by G. L. Turner, alleging that N. F. Turner is the real owner of the goods. There was a judgment for the plaintiff, and the defendants appealed.— *Reversed.*

*Park & Blair,* for appellants.

*Crum & Haddock,* for appellee.

GRANGER, J.—N. J. Turner is the mother of the plaintiff. The plaintiff resides in Kansas. As a witness in his own behalf, he stated that he was the owner of the stock of goods; that he let his mother have one hundred dollars in 1885, and seventy-five dollars in 1886, which had not been repaid. The following is an extract from his testimony: "The millinery business at Bedford was done in my name, and goods were bought and shipped in my name. I do not know anything about the advertising. I allowed Mrs. N. J. Turner to have exclusive management and control of the millinery business in Bedford. I do not know that I publicly announced the fact that the store belonged to me, and that N. J. Turner was my agent. Do not know that prior to the levy of the execution on the millinery stock that I have told any one that I owned stock or store. I never had possession of the store or business at any time. I never personally purchased any goods for said store. Prior to the levy of the execution in this case, I had no talk or communication with anyone about the purchase for goods for said store. I have no letters or copies of letters from any wholesale house in regard to the purchase of goods for the said store. I never was personally assessed in Bedford, except through my agent, N. J. Turner. The millinery goods were never assessed in my name, and I never paid any taxes thereon. Interrogatory thirty-one. If N. J. Turner is your agent, what arrangement exists between you and her as to her compensation? Answer. Our arrangements are as follows: That the said N. J. Turner is to have a living for herself and family, whatever that may be, and that I am to have all the income of the business. The help is paid out of the business by N. J. Turner. I do not own the dressmaking department of the business,—only the millinery stock. N. J. Turner is to have her living out of the business for herself and family, and she does not receive any stated salary."

I. The defendants made offers of the following testimony, which the court excluded, on the objection of the plaintiff: By the assessor, that for the last four years N. J. Turner had the stock assessed as hers, and made oath to the assessment; by the editor of the Bedford paper, where the business was conducted, that at "various times during the past four or five years" N. J. Turner had "advertised her millinery and dressmaking business at Bedford, Iowa, in her own name." It was error to exclude this evidence. The circumstances of this case, under the claim of the appellee, are peculiar and unusual. Under his claim of ownership he had invested N. J. Turner with almost unlimited control of his property and of his credit. He says: "I allowed Mrs. N. J. Turner to have exclusive management and control of the millinery business in Bedford." This "exclusive management and control" must have been as against him, for no one else assumes such a right. If, then, in such management and control, she, by acts or expressions, assumed to be the owner, such acts and expressions were authorized, and were certainly proper evidence as against him. N. J. Turner was in the full possession and control of the stock of goods. In such a case her acts or statements, explanatory of her possession,—that is, whether she held them as her own or as the agent of another,— are admissible. *Hardy v. Moore*, 62 Iowa, 65; *Stephens v. Williams*, 46 Iowa, 540. These acts or statements may not be conclusive, but they are proper to be considered.

II. After the stock of goods was taken by the sheriff the plaintiff, G. L. Turner, made to Lederer, Strauss & Co. a mortgage on the same, and at the time of the trial in the district court a cause was pending therein by Lederer, Strauss & Co. against the sheriff, Bradley, for the value of the goods, on the ground of a wrongful conversion. The defendants in this suit filed a motion,

the requirements of which are somewhat indefinite, for in the first part of the motion it is asked to make "Lederer, Strauss & Co. parties defendant to this action," and in the latter part it asks that the two causes be consolidated. The district court refused the motion. It is quite manifest that Lederer, Strauss & Co. should not be made parties defendant in this suit, for there is nothing to indicate that they have any defense to make against the plaintiff in this suit. In fact, it appears quite clearly that their interests, if not identical, are nearly so. To our minds, a consolidation of the two actions would have brought the plaintiffs in the two suits in a joint contest against the rights of M. Reigleman & Co. to the stock of goods—a right which both plaintiffs were seeking to defeat, and both were endeavoring to fix the ownership as against M. Reigleman & Co., in the plaintiff Turner, with Lederer, Strauss & Co. claiming right thereto against Turner, which, it appears, is not denied. One suit would then have adjusted the entire issues of both cases, and, with the unity of interests of the plaintiffs, the two actions might have been joined, which would bring the cases within the provisions of Code, section 2734, which provides that, whenever two or more actions are pending in the same court, which might have been joined, they may be consolidated. Because of the phraseology of the motion, we are not holding that it was error to refuse it, but have thought it advisable, as the cause is to be reversed, to express these views to the end that, should there be a further application for consolidation under the same conditions, the court might act advisedly in the premises.

III. The only instruction given the jury was the following: "Under the evidence in this cause you will find for the plaintiff; and in so doing you will fix the value of the property described in the petition, and also the amount of damages sustained by the plaintiff on account

of the wrongful detention of the property." There is a complaint that the verdict is excessive, it being for the value of the goods, and two hundred dollars damages for wrongful detention. We need not determine this question, because on another trial, with an instruction defining the proper measure of damage, as we think there should be, there may be no ground for complaint. REVERSED.