B. KIRCHNER, Special Administrator of the Estate of VAL-
ENTINE LENZ, Deceased, v. PETER LENZ, Appellant.

**Gifts:** EVIDENCE: *Directed verdict.* In a suit by an administrator
against his intestate's son, to recover money claimed by the lat-
ter as a gift, defendant's statement that he was to pay interest
on the money so long as his father lived, with other evidence
showing it was a loan, warrants the direction of a verdict
against defendant.

*Appeal from Johnson District Court.*—HON. M. J. WADE,
Judge.

WEDNESDAY, OCTOBER 9, 1901.

PLAINTIFF alleges that on the twelfth day of July,
1898, deceased loaned to defendant $2,400; that Peter Lenz
was appointed administrator, and filed an inventory charg-
ing himself with $1,400 as money loaned to him. The de-
fendant has never paid said $2,400, wherefore plaintiff asked
judgment. The defendant, answering, denies that he bor-
rowed $2,400 from deceased, "but says that he on the said
day borrowed of said deceased only the sum of $1,400;"
admits that he filed an inventory charging himself with
$1,400, and that he has never repaid the money borrowed.
At the conclusion of the evidence the court, on motion of
the plaintiff, directed a verdict for the plaintiff in the sum
of $993.72, and rendered judgment accordingly. Defend-
ant appeals.—*Affirmed.*

*S. H. Fairall* for appellant.

*Baker & Ball* for appellee.

GIVEN, C. J.—I. The sole issue is whether $1,000 of
the money received by the defendant from the deceased was
a gift. The receipt of the money being admitted, the pre-

sumption is that thereby the defendant became indebted to deceased to the full amount received, and the burden is on the defendant to overcome this presumption, and to show that $1,000 of the money was a gift. Appellant's counsel say: "While we consider that mere delivery and acceptance do not *per se* constitute a gift, and the parties must deliver and accept with the intention of making the transaction a gift, we do insist that proof of such intention may be by circumstances, and, as in this case, the relation of parent and child." Accepting this statement of the law as correct, we inquire whether there is proof of such circumstances as that this case should have been submitted to the jury to determine the intention of the parties. The defendant was the son of deceased, and therefore an intention that the transaction should be a gift will be more readily found than as between strangers; but the fact of that relationship does not alone establish the transaction as a gift. We must look to the circumstances in the light of that relationship. The circumstances proven are, in substance, as follows: On the twelfth day of July, 1898, the defendant and his father went to a bank in Iowa City, and delivered to the bank a certificate of deposit by B. Kirchner of $2,351.60 in favor of and indorsed in blank by Valentine Lenz, and received in return a draft on Chicago for $2,342.17, payable to Chancy J. Blair, which draft was forwarded to Mr. Blair in payment of notes held by him against this defendant. It does not appear that anything further was said or done at that time indicating the character of the transaction. B. Kirchner, a son-in-law of the deceased, testifies that in July, 1898, he owed the deceased $2,200 borrowed money, and that at the funeral of the deceased he had a conversation with the defendant, as follows: "I said to him: 'I wonder why it was that Valentine Lenz crowded me for that money,—he wanted me to pay that note.' I told him I was paying seven per cent. interest, and he wasn't needing the money; paid him the interest when due; and I did not know what became of that money; and he says:

'I have got it.' How much had he got? He said $2,400 he got of him. I said to him it is kind of curious that he would take that money away from him while I was paying him seven per cent. He said, "I am paying him six per cent. for that money.' I thought that was all right; and I said, 'Well, then you have got the money.' He said, 'Yes, I have got the money.'." Defendant, being examined as to this conversation, says: Saw Mr. Kirchner at the graveyard, day of funeral. We talked a little together. Nobody present. He asked me what I knew about father's money, and how it was, and whether I got it. So I told him I got $2,400 from father,—$1,000 he gave me with six per cent. interest long as he lived, and $1,400 he loaned me with six per cent. interest, and get it whenever he wanted it." On cross-examination defendant says: "I told him I got $2,400 from father,—$1,000 he gave me forever, with six per cent. interest as long as he lived, and loaned me $1,400 with six per cent. interest, and get it whenever he wants it." One Weisman testifies to a conversation between defendant and his father in a beer saloon at a time when they were drinking beer. He says: "Peter was talking about what he had made,—what he could sell. We hauled rye, etc., and back-talking what he could do. His father got kind of mad. He said: 'You children can't blow a bit. I gave you a thousand before, and now you have $2,400 out of me.' Peter said: 'Well, father, didn't I do something for you? I broke eighty acres of land for you once.' 'Well,' Valentine said, but I paid you for it.' He said: 'You cheated me out of a pile of money. You can't do it any more. I have papers for it.' Peter told him if he wanted the money back he could get it at any time right in the bank again. He did not say how much money in the saloon. The father said some years ago, away back, he loaned Peter a thousand dollars. He said all the rest had got some. That was years ago when they started. That was all that was said." Clearly, there was

nothing in the transaction at the bank to indicate an intention that any part of the money was given and received as a gift. True, it does not appear that defendant executed any written evidence of indebtedness, but the same is true as to the $1,400 admitted to have been a loan. Defendant's own testimony precludes the conclusion that $1,000 of the money was a gift, for he says that he was to pay 6 per cent. interest thereon "as long as his father lived." "Gift: Anything given or bestowed; any piece of property which is voluntarily transferred by one person to another without compensation."—Webster's Dictionary. A gift is not returnable, either in kind or equivalent. If this $1,000 was to be paid at the death of the father, it was not a gift. There is no claim in argument that it was an advancement to be charged to this defendant in the distribution of the estate. We think the defendant failed to present any evidence in support of his defense that would have sustained a verdict in his favor, and therefore there was no error in directing a verdict against him.—AFFIRMED.