WILLIAM ROBERTS, Administrator, Appellee, v. WAYLAND MORSE et al., Appellants.

**PLEADING:** Motion—Evidentiary Matters. Evidentiary matters are properly stricken from a pleading. So held as to a plea of gift, the evidentiary matter being a recital of the existence of a moral consideration for the gift.

**GIFTS:** Evidence—Existing Moral Consideration. An existing consideration, either legal or moral, may be an important circumstance in support of a plea of a *gift.*

**WITNESSES:** Impeachment—Inconsistent Statements. A witness who has testified that he was present when his wife's father made an absolute gift of certain property to the wife may, on proper foundation, be impeached by a showing that, on a later occasion, he listed said property as belonging to the father.

**EVIDENCE:** Admissions—Listing Property for Taxation. The act of an alleged donor, subsequent to the time of the alleged gift, in listing for assessment the alleged gift as· his own property, is a circumstance which may have some evidentiary bearing on the issue of gift.

**EVIDENCE:**    **Declarations In Re Ownership.**   On the issue whether certain property had been transferred as a gift, the declarations of the alleged donor, subsequent to the time of the alleged gift, *that he owned said property*, are inadmissible, when such declarations were not (1) explanatory of possession, or (2) against declarant's interest.

**GIFTS:**    **Presumption From Possession.**   One who has the full burden to prove a gift is not entitled to an instruction that his possession is presumptive evidence of ownership.

*Appeal from Dallas District Court.*—LORIN N. HAYS, Judge.

### MARCH 8, 1921.

ACTION by an administrator to recover from the defendants the possession of a certain promissory note and certain liberty bonds owned in his lifetime by the decedent. The defendants answered with a general denial and an affirmative defense to the effect that the decedent had made a gift of the property to the defendant F. E. Morse. There was a verdict for the plaintiff and judgment thereon. The defendants appeal.—*Reversed and remanded.*

*White & Clarke,* for appellants.

*D. H. Miller* and *E. W. Dingwell,* for appellee.

EVANS, C. J.—The defendants are husband and wife. F. E. Morse was the daughter of the decedent, John Bringham, who died in September, 1918. The promissory note involved in the controversy was for $3,000, and was executed by the defendants to Bringham as payee, for an admitted indebtedness, in October, 1914. The gift of said note, if made, was so made about a week after the execution thereof. The liberty bonds amounted to $1,500, and were acquired about one year before the death of Bringham. The gift to Mrs. Morse, if made, was so made about December 1, 1917. The contention for her is that she had been in possession of both the note and the bonds from the respective dates named. The direct evidence given in sup-

port of the claim of gift of the note was the evidence of the husband, Wayland Morse, and was as follows:

"It was about a week after the making of the note. I heard a conversation between my father-in-law and F. E. Morse, my wife, at that time, with reference to this note. I did not take any part in that conversation. My father-in-law gave my wife the note, and told her that it was for services she had rendered for the family; and he read it over a couple or three times before he gave it to her. He said: 'I will give you this, Flora, for what you have done for the family and what you will have to do for me. There is nobody else to do it. They are all gone.' After he said that, he gave the note to her. I don't recollect of anything else being said by him when he gave her the note just now. Yes, he did say: 'I will have to have the interest as long as I live. That is all I ask of you.'"

The direct evidence in support of the claim of gift of the bonds was that of Mrs. Morse herself, and was as follows:

"The $1,500 worth of bonds came into my possession the first of December, 1917. I was present at a conversation between my father and my husband, prior to the time these bonds came into my possession, in which he spoke of the bonds. I took no part in the conversation, which was at his home,—father's house. I could not state the date. It was not very long before he died. It was in the sitting room. There was no one present but myself and Wayland. Father was there. We three were the only ones present. At that time, father says: 'Wayland, here are some checks. You take them and buy Flora a liberty bond for $1,500.' He did not say how many checks. I saw him give Wayland some checks at that time."

The evidence of the widow of decedent was that she was present at the time of the execution of the promissory note, and that such note continued in the possession of decedent, to her knowledge, for at least one or two years thereafter. She also testified that she was present at the time and place fixed by Mrs. Morse as the time and place of making the gift of the liberty bonds, and she denied that any such conversation as testified to by Mrs. Morse took place. The other testimony in the case consists, in the main, of declarations and impeaching circumstances. The family history, shown in brief, was that the decedent was

divorced from his wife about 27 years prior to his death, and that the divorced wife thereafter at all times made her home with her daughter, Mrs. Morse; that there were five children of the marriage, two of whom had died. One of these left a family of children. Three survived the decedent. Only Mrs. Morse, however, lived in his immediate neighborhood. She and her husband had always been attentive and serviceable to him. The decedent left other property. After the divorce, he was again married, but there were no children of the marriage. He was 85 years old at the time of his death.

I. The answer pleaded by defendant F. E. Morse contained the following:

''She denies that the said promissory note was, at the time of the death of the said John N. Bringham, the property of the said John N. Bringham, but she alleges the truth to be that said promissory note has been, since about a week after the signing thereof, surrendered and delivered to her by the said John N. Bringham as a gift [to compensate her and her husband, Wayland Morse, for the care and keeping of the mother of this defendant, extend'ng over a period of about 22 years, up to the time of her death, which occurred about the month of July, 1914, and for the care and keeping extended by them to the said John N. Bringham for many years during his lifetime, and for services rendered his daughter, Mrs. Ollie M. Noland, involving the expense of bringing her body from the state of Washington for the purpose of burial in Dallas County, Iowa, and for money disbursed and expended by the said answering defendant and her husband in the prosecution of all of said purposes].''

1. PLEADING: motion: evidentiary matters.

Upon motion of plaintiff, the court struck from the answer all that part of the foregoing paragraph following the word ''gift.'' For convenience, we have included in brackets the portion so stricken. The ground of the motion was that the stricken matter was redundant, irrelevant, and immaterial. Complaint is made by appellant of this ruling, and the first ground of reversal is directed thereto. The matter thus stricken was manifestly evidentiary, and there was, therefore, no occasion to plead it. This much the appellants are disposed to concede;

but it is also laid as a ground of reversal that the court refused that line of evidence.

It is undoubtedly true that no consideration need be shown in support of an alleged gift, and yet an existing consideration, either legal or moral, may be an important circumstance in support of proof of gift. In making proof of 2. Gifts: evidence: existing moral the alleged gift, the circumstances surrounding consideration. the parties may be shown, including facts, if any, which would fairly tend as an inducement or motive to the donor to make the gift. This is especially so when it is made to appear that the gift was made by the donor in response to or recognition of such inducing facts. We are impressed from a reading of the record that the trial court drew a rather tight rein upon this line of evidence. On the other hand, the offer of such evidence was rather indefinite, and without any showing of what the plaintiff proposed to prove. In view of our conclusion upon another feature of the case which will necessitate a new trial, we are disposed not to pass definitely upon this assignment, further than to lay down the broad rule which we have indicated. This will be a sufficient guidance for a future trial.

II. The plaintiff introduced the testimony of the witness Clayton, who detailed a transaction and conversation had by him with the defendant Wayland Morse. This transaction was 3. Witnesses: im- had in the year 1917. Clayton was at that time peachment: in- consistent state- in a semipublic service of apportioning liberty ments. bonds to the patriotic people of his community as purchasers. It was his part of the work to make schedules of the financial resources of the various citizens, with a view of determining what amount of bonds should fairly be apportioned to them. Bringham was at that time too ill to be interviewed, and Morse acted for him in scheduling his property. He scheduled the promissory note of $3,000 and the liberty bonds as property of Bringham. This evidence was received over the objection of the defendants, as being incompetent and hearsay, the defendant not being present at the time of the alleged conversation. Error is assigned upon the admission of this testimony. The conversation of Morse, as detailed by this witness, was inconsistent with the testimony given by him as a witness

for the defendants. On cross-examination, his attention was directed to the Clayton conversation, and he was fully interrogated thereon. A sufficient basis was laid in this cross-examination for the introduction of the testimony of Clayton as impeaching evidence. We think there was no error at this point.

III. Bentall, a witness for the plaintiff, was the assessor, and had assessed Bringham in the last two or three years of his life. The $3,000 promissory note was returned by Bringham

4. EVIDENCE: admissions: listing property for taxation.

for assessment, and it was so assessed. The evidence of Bentall was to this effect. It was received over the objection of the defendants that it was hearsay, and error is assigned upon the adverse ruling.

This note was assessable, whether owned by Bringham or by Mrs. Morse. If Mrs. Morse did not schedule it for assessment, and if Bringham did, we see no reason for saying that this fact would not be a proper circumstance for the consideration of the jury. This is not saying that it would be conclusive of anything.

Bentall further testified to statements made to him by Bringham concerning his ownership of the $1,500 of bonds. This evidence also was received over objection, and complaint is made

5. EVIDENCE: declarations *in re* ownership.

thereof. The bonds were not assessed; neither were they assessable. The statement made by Bringham was not a declaration against his interest. It was not made in explanation of his possession. We see no escape from holding that the testimony was improperly admitted. Testimony along the same line was given by the widow of the decedent as to statements made by her husband to her concerning both the promissory note and the bonds. For the same reason, this testimony also was improperly received. Testimony of this character, if improper, was necessarily prejudicial.

IV. Defendants requested instruction to the effect that her possession of the note and bonds was presumptive evidence of the ownership thereof. This request was denied, and error is as-

6. GIFTS: presumption from possession.

signed thereon. Granting it to be true that possession of personal property is presumptive evidence of ownership, yet it is not necessarily presumptive evidence of a gift. Under the undisputed evidence herein, the decedent was, in his lifetime, the owner of the property

in question, and continued to be the owner thereof until his death, unless such ownership had been divested by a gift·thereof. The defendant set up the affirmative defense that Mrs. Morse acquired her ownership by a gift. The burden was upon her to prove it. *Kirchner v. Lenz*, 114 Iowa 527; *Samson v. Samson*, 67 Iowa 253. Unless the fact of gift were proved, then the conceded ownership of the decedent during life presumptively continued to the time of his death, and the possession of the defendants, if such, would become presumptively that of a bailee. We see no error in refusing the requested instruction. For the errors pointed out in Division III hereof, the judgment below must be and is reversed.—*Reversed and remanded.*

WEAVER, PRESTON, and DE GRAFF, JJ., concur.