HELEN MALCOR, Administratrix, Appellee, v. ELIZA J. JOHNSON, Appellant.

No. 43818.

May 4, 1937.

Rehearing Denied October 1, 1937.

646

Seneca Cornell, Chas. Bookin, and Jo R. Jaques, for appellant. .

Miller, Everett & Miller and Jones & White, for appellee.

SAGER, J.—In 1930 and 1931 W. H. Thomas bought the bonds in question. Appellant claims that they were given to her in the presence of her husband, and asserts that from the time of receiving them they remained constantly in her possession. She says that, in keeping with her claim that Thomas was to have the interest, she presented a number of coupons and had the interest deposited in the name of Thomas. At the time of doing so she was required by the banker to write the name of the owner of the bonds on a blank provided for that purpose, this being said to be a requirement of the Federal Revenue Department. On these blanks she wrote the name "W. H. Thomas" under the words: "I certify that to the best of my knowledge and belief the information entered hereon is correct. Under the name written by her appeared on the printed form these words: "(Signature of owner, trustee or agent.)" Other parts of the blanks were filled out by the banker, who then placed them in envelopes to be collected through the clearing house. These envelopes bore the notation, following the printed word "Depositor," "W. H. Thomas."

Other details appeared on these exhibits which need not now be set out. The admission of them in evidence by the court affords the basis of one of the complaints made by the appellant.

The evidence discloses that for a part of the time these bonds, after their purchase and after appellant claims to have received them as a gift, were kept by appellant in a safe in the home of one Loomis, and a part of the time in a lock box in the

bank. To this box she gave authorization that Thomas might have access, and it appears that he availed himself of such right on one or more occasions.

The testimony in this case very largely consists of statements alleged to have been made by appellant. In some of them it is alleged by appellee that she disclaimed having any notion that her brother, the decedent, who was a poor miner, could possibly have had any bonds; and testimony of a number of witnesses in behalf of appellant tending to show that Thomas admitted having given these bonds to her.

Thomas died on August 1, 1935. Shortly thereafter appellee was appointed administratrix, and in seeking to ascertain the nature and extent of the estate questioned the appellant, which questioning evoked the alleged denial of any knowledge of any bonds as above indicated. After the death of Thomas, appellant and her two sisters went to the bank, removed the bonds in question from the lock box, and took them to the office of an attorney, with whom they remained until this suit was brought.

Without undertaking to set out the evidence in detail, it is apparent that the question whether or not Thomas gave these bonds to the appellant (or the contrary) is a question of fact to be determined by the jury, unless the record so clearly established a right thereto in appellee or appellant that the court should have directed a verdict in that behalf. A number of complaints are lodged against the rulings of the trial court, and many decisions are cited. Manifestly, it would extend this opinion beyond reasonable length to examine each objection in the detail with which it is argued, or to analyze all the cases upon which the parties rely. We content ourselves with considering those questions which seem to us important in determining whether there is reversible error in the record.

■■■ One of the objections urged by appellant to the rulings of the trial court is that the court erred in the admission of the "ownership certificates" and the envelopes in which they were enclosed. The objection, briefly stated at this point, is that such exhibits were incompetent and of no probative value for the reason that they do not attempt to certify who was the owner of the bonds; and for the further reason that Mrs. Johnson wrote in only the name of Thomas as the owner of the bonds and did not fill out the rest of the blank. This criticism overlooks some circumstances surrounding the signing, as disclosed by the

testimony of the banker. The circumstances under which appellant wrote the name ''Thomas'' clearly warranted the court in submitting the exhibits for such weight as the jury might give them on the question whether, by acting as she did, appellant made an admission that Thomas was the owner of the bonds at the times interest coupons were cashed.

Appellant's contention that because she wrote on only one part of the exhibit all the rest of it should be excluded does not call for serious consideration.

■■■ Again, appellant argues that the court erred in overruling her motion for a directed verdict on the general grounds that the evidence was insufficient; that there was no competent proof of ownership in Thomas at the time he died, or that he had possession thereof; that the evidence conclusively shows possession in the appellant, which according to her argument evokes a conclusive presumption that she was the owner of the bonds. The correctness of this contention is considered in the discussion of other complaints, so it will not have extended attention here. If we gather the drift of appellant's argument, it is based upon the frequently stated rule that the possession of personal property is *prima facie* evidence of title in the possessor, and casts the burden of proof on one who seeks to dispossess him of the property. Appellant's position begs the question before the court. She overlooks the fact that the undisputed record is that Thomas bought and paid for the bonds, with the consequent presumptions that follow from that fact. She overlooks also that one of the questions to be considered by the jury was the mutual accessibility of the appellant and of Thomas to the lock box in which the bonds were contained, and that such accessibility might argue that the sole possession was not in appellant; and she ignores, too, the very essence of the controversy, to wit, had there been any gift at all?

■■■ In division 3 of her argument appellant complains that she was not permitted by the court to testify that she showed one Loomis a list of these bonds made out by her, or that she told her sister that she (appellant) had possession of the bonds. In support of her contention she cites Stevens v. Peoples Savings Bank, 185 Iowa 619, 171 N. W. 130, 133; Stephens v. Williams, 46 Iowa 540; Blake v. Graves, 18 Iowa 312; Turner v. Bradley, 85 Iowa 512, 52 N. W. 364; Nodle v. Hawthorn, 107 Iowa 380, 77 N. W. 1062. An examination of these cases distinguishes

them from the case at bar. If there be cases holding that the party claiming to be the donee of a gift may sustain his claim by showing by his own testimony statements in self-interest made by him, they are not in this list, nor have we found any under the circumstances we have here. We do not overlook that line of cases which holds that where a claim to property as a gift is made after the death of the donor, and the charge is made that this claim is an afterthought or an invention, the claimant may prove statements made earlier. As stated in one of the cases cited by appellant, the Stevens case, supra:

"The evidence [of the character under discussion here] on behalf of the plaintiff tended to show that the claim now made by the defendant had never been made by her during the lifetime of the decedent, nor for some time thereafter."

It is perfectly clear that in such a situation evidence of other witnesses of statements of claims made prior thereto are receivable in evidence.

■■■ Complaint is next made of the giving of instruction No. 11, in which the court said, in part:

"In order to establish a gift of the bonds in question, the defendant, Eliza J. Johnson, relies in part upon proof of oral statements claimed to have been made by W. H. Thomas in his lifetime."

The instruction goes on to state that verbal statements should be received with caution, and proceeds to announce well-established rules to be applied in weighing this class of testimony. The complaint is that the manner of statement adopted by the court served to discredit the testimony of statements made in her behalf, while not giving the same effect to statements claimed to have been made by the appellant favorable to appellee. We are inclined to think that this objection would be good if this instruction stood alone, but another instruction obviated the force of this criticism. Without quoting this instruction (No. 15) in verbatim, this appears:

"Testimony has been introduced in this case tending to show that the defendant and one or more witnesses testifying in this case have made statements out of court which it is claimed are materially at variance with the testimony given upon the trial of this case."

The instruction announces rules of law of which appellant makes no complaint, and then continues:

"If the testimony of such party or witness is sustained by other corroborating evidence, or if for any other reason you believe what such party or witnesses testified to is the truth, then you should not disregard it, and the weight to be given the testimony of such party or witness, if any, as well as the credit and weight to be given each and all of the witnesses, are matters to be determined by the jury alone in view of all of the evidence and all the facts and circumstances proven and established upon the trial of the case."

We do not stop to analyze the cases cited at this point of the controversy for the reason that a cursory reading of them will disclose that they are not contrary to what is here stated. Those cited by appellant sustain the general proposition on the admission in evidence of statements made explanatory of possession, to explain whether the claim of possession was based on right, agency, or otherwise. There was no error here.

Appellant next argues that there was error in giving instruction No. 9, because the court in setting out what was requisite to constitute a gift, said, among other things:

"The delivery of property without an intention to pass the title thereof to the recipient is not sufficient to constitute a gift, nor will *an expressed intention to make a gift at some future time* be sufficient to constitute a gift." (Italics ours.)

The objection is, first, that there was no evidence of any intention to make or not to make a future gift; second, that the court did not advise the jury that a long-continued possession of property under claim of ownership raises the presumption that the donor intended to pass title at the time of delivery and that the possessor of said property is the owner; next, that the evidence to establish a parol gift must be of such character "that it is clear, unequivocal, and convincing."

■■■ With reference to the first part of this complaint, to wit, the reference to a future gift, it might perhaps have been omitted without error, but in view of the state of the record with reference to interest on the bonds, and the admission (if she made it) that she was to receive no interest while Thomas lived, no reversible error could have resulted from allowing the jury

to consider it. The cases upon which appellant relies do not express a contrary view. The substance of them is that the court should not instruct with reference to a matter wholly outside of the record, and that to do so is, or may in certain cases be, reversible error; particularly if the instruction has the effect of directing the attention of the jury to a consideration of something that was not in the case at all.

Thus, in Deweese v. Iowa Transit Lines, 218 Iowa 1327, 1333, 256 N. W. 428, 431, the first of the authorities cited by appellant and the latest in point of time, comments on the instruction under scrutiny there as follows:

"Under the instruction complained of, the jury was invited to consider something of which there was no evidence in the case at all."

The other cases are to the same general effect. We have no such situation here. The objection with reference to the long-continued possession on the part of appellant begs the question, as has already been stated; and the degree or nature of proof required by the instruction is sustained by authority.

█■█ The rule on this subject is stated in 28 Corpus Juris, p. 669, section 71:

"The mere possession of a chattel, unaccompanied by proof of its delivery by the donor to the donee, raises no presumption of a gift."

If it be said that there is proof of delivery here, the answer is that that was one of the questions for decision in the case.

The same authority, section 82, with citation of numerous cases, states:

"* * * it is held that gifts inter vivos are watched with caution by the courts, and that to sustain them the evidence must be clear and convincing."

This reference will disclose a number of terms used by the various courts to express the same idea, and continues:

"In weighing conflicting evidence it is not sufficient, however, that the preponderance of evidence may turn the scale slightly in favor of a gift. The preponderance must be such as to leave no reasonable room for doubt as to the donor's intentions."

We do not commit ourselves to the extreme doctrine that the proof must be sufficient to remove all reasonable doubt, and this authority is quoted only for the purpose of showing the length to which some of the courts have gone in the strictness demanded in making proof of gifts.

■■■ A further complaint on the part of appellant is that there was error in instruction No. 12, to the effect that the fact that appellant was for a time prior to the death of Thomas in possession of the bonds, "would not, standing alone, warrant you in finding that she was then the owner of such bonds, nor does it of itself alone raise a presumption of a gift of said bonds to the said Eliza J. Johnson, but it is an essential element in the proof of a gift and a proper circumstance to be taken into consideration along with all the other evidence in the case in determining whether or not said W. H. Thomas made a gift of said bonds to the defendant, Eliza J. Johnson."

We can do no better in answering this contention than to quote from Roberts v. Morse, 190 Iowa 1344, beginning at p. 1349, 181 N. W. 678, 680:

"Defendants requested instruction to the effect that her possession of the note and bonds was presumptive evidence of the ownership thereof. This request was denied, and error is assigned thereon. Granting it to be true that possession of personal property is presumptive evidence of ownership, yet it is not necessarily presumptive evidence of a gift. Under the undisputed evidence herein, the decedent was, in his lifetime, the owner of the property in question, and continued to be the owner thereof until his death, unless such ownership had been divested by a gift thereof. The defendant set up the affirmative defense that Mrs. Morse acquired her ownership by a gift. The burden was upon her to prove it. Kirchner v. Lenz, 114 Iowa 527, 87 N. W. 497; Samson v. Samson, 67 Iowa 253, 25 N. W. 233. Unless the fact of gift were proved, then the conceded ownership of the decedent during life presumptively continued to the time of his death, and the possession of the defendants, if such, would become presumptively that of a bailee. We see no error in refusing the requested instruction."

In the case at bar there is no controversy over the fact that the bonds were bought and paid for by W. H. Thomas.

■■■ It would unduly prolong this opinion to examine at

length every criticism offered by appellant to the instructions given by the trial court. Sufficient to say we have examined them carefully, and find that they accurately state the rules of law applicable to the case under investigation. It may be true that some were not given in the language of those requested by appellant, but a comparison will show that the court gave to the appellant everything to which she was entitled. We are impressed with the thought that appellant lays too much stress upon the failure of the court to use certain words deemed essential by her, and overlooks the fact that the instructions really covered the same field. Thus, in complaining of instruction No. 15, which we have already touched upon, appellant cites a number of cases in which the court in its instruction uses the words "successfully impeached". Error is assigned apparently because of the absence of this phrase from the instructions given by the court. We have already examined instruction No. 15, and have expressed the view that it correctly states the law. It does not use the words "successfully impeached", but it does mean the same thing, in that it imposed on the jury the duty of giving to the testimony of each and every witness such weight, considering the alleged impeaching statements, as in their judgment under all the circumstances disclosed by the record they considered it entitled.

More might be said in distinguishing the various citations, and much elaboration might be indulged in a statement of the facts disclosed by the record, but no good purpose would be subserved thereby. The nature of the case made it especially for the jury. We are not concerned with the question whether the conclusion reached by it was one which we would have reached had we been the triers of the facts. It may even be admitted that a contrary result would have been not without support in the evidence; but, finding no substantial error on the part of the trial court, and none affecting the right of appellant to have her case properly submitted, the case is affirmed.—Affirmed.

RICHARDS, C. J., and ANDERSON, DONEGAN, MITCHELL, PARSONS, and KINTZINGER, JJ., concur.