**PROVIDENT MUT. LIFE INS. CO. OF PHILADELPHIA v. BENNETT et al.**

No. 117.

District Court, N. D. Iowa,
Central Division.

Nov. 27, 1944.

B. B. Burnquist, of Fort Dodge, Iowa, for plaintiff, Provident Mut. Life Ins. Co. of Philadelphia.

Alan Loth, of Fort Dodge, Iowa, and F. J. Lund, of Webster City, Iowa, for defendant Nellie Wanamaker.

John H. Mitchell, of Fort Dodge, Iowa, for defendant Floyd B. Bennett.

GRAVEN, District Judge.

This is a contest between a divorced wife and husband as to the ownership of an amount payable under an endowment provision of an insurance policy. The defendant, Floyd B. Bennett, and Nellie Bennett, now Nellie Wanamaker, were married at Webster City, Iowa, on February 7th, 1912. The parties during the period they lived together, lived at Webster City, Iowa, Sioux Falls, South Dakota, Sioux City, Iowa, Beatrice, Nebraska, and Lincoln, Nebraska. Since 1925, the defendant, Floyd B. Bennett, has been a resident of the State of Kentucky, residing at Louisville in that State. The defendant, Nellie Wanamaker, has since 1920, at least, been a resident of Hamilton County, Iowa, residing at Webster City in that County. Hamilton County, Iowa, is in the Central Division of the Northern District of Iowa.

In the month of April, 1920, there was issued to Floyd B. Bennett by the plaintiff, Provident Mutual Life Insurance Company of Philadelphia, a Pennsylvania corporation, at Lincoln, Nebraska, its Policy No. 346921. This policy was dated April 3rd, 1920, and was in the principal sum of $1,-000, and contained both endowment and death provisions. The policy provided for semi-annual payments in the sum of $20.50, or annual payments in the sum of $41. The pertinent provisions of the policy relating to the endowment part of the policy, reads as follows: "Payment If Insured Shall Live to Maturity of Endowment: If the insured shall be living on the Third day of Fourth Month, One thousand nine hundred and forty-four the Company will pay said sum to the Insured or his Assigns, with the right reserved to the Insured to change the Endowment Recipient."

The pertinent provisions relating to the death benefits under the policy, reads as follows: "Payment If Insured Shall Die Before Maturity of Endowment: If the Insured shall die before the Maturity of the Endowment, the Company will pay said sum to his wife, Nellie Bennett, if living; otherwise to his Executors, Administrators or Assigns, with right reserved to the Insured to change the Beneficiary."

The policy also contained the following provisions:

"Change of Endowment Recipient and Change of Beneficiary: The Insured, if of full age, may change and successively change the Endowment Recipient, whether original or substituted, without the consent of the Endowment Recipient, if such right has been reserved to the Insured; and may change and successively change the Beneficiary, whether original or substituted, without the consent of the Beneficiary, if such right has been reserved to the Insured; Provided, that in any change as aforesaid the interest of any newly designated Endowment Recipient and the interest of any newly designated Beneficiary shall be subject to the right of any prior Assignee of the Policy. The Insured may declare the designation of any Endowment Recipient to be irrevocable and may also declare the designation of any Beneficiary to be irrevocable. During the life of any Irrevocably Designated Endowment Recipient or Irrevocably Designated Beneficiary, the Insured shall not have the right to revoke or change the designation of such Endowment Recipient or such Beneficiary without the written consent of such Endowment Recipient or such Beneficiary, filed with the Company at its Home Office. If any Endowment Recipient revocable or irrevocable, or if any Beneficiary, revocable or irrevocable, dies before the Insured, the interest of such Endowment Recipient or such Beneficiary shall vest in the Insured, unless otherwise specifically provided. Every change of Endowment Recipient or change of Beneficiary, or change from revocable or irrevocable designation of either thereof, must be made by written direction of the Insured, or by written direction of the Insured and Irrevocably Designated Endowment Recipient or Irrevocably Designated Beneficiary, as the case may be, and filed with the Company at its Home Office, accompanied by the Policy, and the Company shall be charged with notice thereof only when endorsed on the Policy by the Company."

"Assignments: No Assignment of this Policy shall be of any force or effect so far as the Company may be concerned, unless in writing and until the original or a duplicate thereof is filed at its Home Office. The Company assumes no responsibility for the validity of any Assignment."

On March 3rd 1944, there became due under the endowment provisions, the sum of $1,001.89. The sum of $1.89 represented accrued dividends. The defendant, Floyd B. Bennett and Nellie Wanamaker, formerly Nellie Bennett were both living on March 3rd, 1944, and are both still living. Each of them claimed from the plaintiff the amount of the endowment payment. The plaintiff thereupon filed a complaint under the Federal Interpleader Statute, 28 U.S.C.A., § 41(26), in the Central Division of the Northern District of Iowa, making Floyd B. Bennett and Nellie Wanamaker parties thereto, and asking leave to pay into court the said sum of $1,001.89 and be exonerated from all further liability under the policy. By proper proceedings the plaintiff has paid that sum into court and has been discharged from all liability under the policy. The defendants, Floyd B. Bennett and Nellie Wanamaker, each claim ownership of the fund.

No written change of endowment recipient or beneficiary has ever been filed with the Company, and the policy on its face appears as originally written.

The two defendants were the only witnesses in the case, and their testimony is in sharp contradiction. The defendant, Nellie Wanamaker, testifies that she and the defendant, Floyd B. Bennett, separated in the year 1916 or 1917, and that she then came back to Webster City, Iowa, and has continuously resided there since that time; that for several years at least she supported herself by her own efforts. It is her further testimony that in the spring of 1921, the defendant, Floyd B. Bennett, came to see her at Webster City, Iowa; that he brought the policy in question with him and gave it to her, saying: "Nellie, I have taken out insurance for my sister and you, a thousand dollar policy each," and, "Now, no matter what happens I shall always keep this in force for you." She testified that that was the first time she had seen the policy. She further testified that she has been in possession of the policy at all times since it was given her. The defendant, Floyd B. Bennett, testified that in April, 1920, he and the defendant, Nellie Wanamaker, were living together as husband and wife; that upon his receiving the policy from the Company, he gave the policy to her and told her to take care of it, and that she then put it in a dresser drawer where receipts and papers were kept. The defendant, Floyd B. Bennett, testified that he has not had possession of the policy since that time. It is undisputed that the defendant, Floyd B. Bennett, has paid all the premi-

ums due under the policy. Nellie Bennett married one Wanamaker in the year 1925, and the defendant Floyd B. Bennett remarried in the year 1943.

The defendant, Floyd B. Bennett, went to Mason City, Iowa, to live in June or July, 1920. At that time, according to his testimony, he and his wife were separated. On July 8th 1921, he filed a petition for divorce against his wife in the district court at Mason City, Cerro Gordo County, Iowa, which resulted in a default decree of divorce against the defendant, Nellie Bennett, on October 4th, 1921, based upon cruel and inhuman treatment. Nothing is said or provided in the decree as to property rights or alimony. In the petition for the divorce which was sworn to by the defendant, Floyd B. Bennett, it was stated that Nellie Bennett had deserted him on or about March 1st, 1920. It appears from the testimony of both parties that the defendant, Floyd B. Bennett, visited his former wife on several occasions while he was living at Mason City, before he got the divorce. It also appears that he wrote to her from time to time both before the divorce and after the divorce, and even after her re-marriage. Such of the letters as are in evidence showed a continuing affectionate regard for her. Surprisingly enough, the parties have at no time manifested any feeling of ill will or bitterness towards each other while separated, and manifested none during the trial of the case. Some time before July, 1921, one or both of the parties had divorce proceedings in mind. It is the contention of the defendant, Floyd B. Bennett, that in 1921 he received a letter from a lawyer in Webster City, representing Mrs. Bennett, saying that she wanted to get a divorce and wanted Mr. Bennett to pay for it; and that thereupon he wrote in response that he would get the divorce himself, and then proceeded to do so. It is the claim of Mrs. Wanamaker that when she decided she wished to get a divorce and took the matter up with an attorney, that that attorney advised her after making an investigation that Mr. Bennett had already started proceedings for a divorce. Mrs. Wanamaker then allowed Mr. Bennett to get the divorce uncontested. Although Mr. Bennett and his wife were closely in touch with each other in the months preceding the divorce, for some strange and puzzling reason Mr. Bennett served notice upon her of the divorce action by publication, based upon his affidavit that service could not be had upon his wife in the State of Iowa. It is the claim of Mrs. Wanamaker that if Mr. Bennett had not given her the insurance policy, she would have made claim for alimony in the divorce action. The situation as to what property, if any, Mr. Bennett had accumulated prior to the divorce, does not appear. No children were born to the marriage.

It does appear that since shortly after marriage to Mrs. Wanamaker, Mr. Bennett has had steady work for telephone companies, and that prior to separation he was making around $200 a month. When the parties separated, the household furniture was turned over and shipped to Mrs. Wanamaker. It also appears that Mr. Bennett has never at any time since the separation ever paid or given her any money for her support, or turned any property over to her except the household furniture and the insurance policy in question. It is the claim of Mrs. Wanamaker that at no time since the policy was turned over to her has Mr. Bennett ever requested the policy or written about it. It is the claim of Mr. Bennett that in the year 1925, he wrote Mrs. Wanamaker asking if she had the policy, but received no answer. In the year 1942, Mrs. Wanamaker received a letter from the plaintiff Insurance Company asking if she was the person named as beneficiary in the policy. She promptly wrote back that she was and that she had possession of the policy and wished the money under it. It appears that this activity on the part of the plaintiff had its origin in an inquiry made by Mr. Bennett of the Company. It should be noted that at the time of the claimed delivery of the policy to Mrs. Wanamaker in 1921, the policy had only been in force around a year and the most that Mr. Bennett could have paid on it was around $80, and that any benefits that his wife would get would be dependent upon Mr. Bennett keeping up the premium payments.

It appears that in April, 1927, Mr. Bennett took the matter up with the plaintiff Insurance Company about having a change made in the beneficiary under the death provisions of the policy. He received a blank back from the Company for that purpose, but was advised he would have to send in the policy to have the change made. He did nothing further in the matter. However, near this time he had written Mrs. Wanamaker a very friendly letter, but made no reference to the policy or the possession thereof.

It appears that in 1921, while at Mason City, and before Mr. Bennett brought his divorce action, he knew that he did not have possession of the policy. Since even according to his own testimony his wife had had it last, there can seem to be little doubt that since 1921, Mr. Bennett knew that Mrs. Wanamaker had the policy, and yet he never made any demand for it.

It should be noted that different from many cases here Mrs. Wanamaker's name appeared in the original policy as the beneficiary under the death provisions and that she did not need possession of the policy to give her the benefit of that provision. She would only need the policy if she was to be the endowment recipient in lieu of Mr. Bennett who was named therein as such.

In controversies over the proceeds of insurance policies where the transactions took place many years ago and the oral testimony is conflicting, the rule to be observed by a trier of the facts is well stated in the case of New York Life Insurance Company v. Cross, D.C., S.D.N.Y.1934, 7 F.Supp. 130, on page 132 as follows: "In an amorphous situation of this kind, the contemporary attitudes of the parties, especially if they are shown by documents and letters, must control, as they are the only safe guides to a trier of the facts. Harris v. Morse, D.C., 54 F.2d 109, 115, 116; Irving Trust Co. v. Deutsch et al., D.C., 2 F.Supp. 971, 989."

In this case the time when the parties separated is a matter of great importance, for if the parties were already separated when Mr. Bennett received the policy in April, 1920, then his account of how Mrs. Wanamaker secured possession of the policy in Lincoln, Nebraska, could not be in accord with the facts.

If the parties were separated before the policy was delivered to Mr. Bennett by the Company in April, 1920, then Mrs. Wanamaker could not have been given possession of the policy at Lincoln, Nebraska, but must have been given possession of it at Webster City, Iowa, where she lived at all times after they separated. If she received the policy at Webster City, Iowa, then Mr. Bennett must have brought and given it to her there. The only written evidence that bears on this point is the divorce petition verified by Mr. Bennett on July 5th 1921, in which he stated that his wife had deserted him on or about March 1st 1920. Since the petition was sworn to while the facts were fresh and recent, it must be held that these parties were separated at the time Mr. Bennett received the policy, and that Mrs. Wanamaker's version in regard to the circumstances under which she came into possession of the policy, is the correct version. The contemporaneous attitude and consistency or lack of consistency is also important. Mrs. Wanamaker's attitude throughout the years was always consistent with her claim to the policy. The contemporaneous attitude of Mr. Bennett weakens his present claim. It satisfactorily appears that while at Mason City before he brought the divorce action he knew that he did not have possession of the policy and that Mrs. Wanamaker did. If as he now claims Mrs. Wanamaker had surreptitiously and wrongfully secured possession of the policy, that matter could have been settled in the divorce action, and naturally would have been. If throughout the years Mrs. Wanamaker was wrongfully withholding the policy from him, he could have brought a replevin action or other action to recover possession. If Mrs. Wanamaker was attempting to wrongfully deprive him of his rights under the policy, he could have in the earlier years stopped paying the premiums on it with small financial loss, and provided himself with another policy or policies with which Mrs. Wanamaker could not have interfered. At the time when he brought his divorce action he could not have had more than $80 invested in the policy. The kindly and affectionate attitude of Mr. Bennett towards his wife as shown by the letters in evidence, written years after the separation, are consistent with the version of Mrs. Wanamaker. Therefore, on the whole record it must be taken as established that in the spring of 1921, Mr. Bennett made manual delivery of the policy to her with the intent and purpose to make a gift to her of the policy and of any amount that might be paid under the endowment provisions thereof.

The defendant, Floyd B. Bennett, contends that even if it should be found that the transactions in regard to the policy took place as claimed by Mrs. Wanamaker, yet she must fail because of the lack of a written assignment or other writing evidencing her claim. While in the instant case the policy provided that any assignment of the policy or any change of the endowment recipient should be by a writing filed with the Company, such provisions

are for the benefit of the Company and may be waived by it. Petty v. Mutual Benefit Life Ins. Co., Iowa 1944, 15 N.W.2d 613; Dvorak v. Kucera, 1936, 130 Neb. 341, 264 N.W. 737; Rahders, Merritt & Hagler v. People's Bank, 1911, 113 Minn. 496, 130 N.W. 16, Ann.Cas.1912A, 299. The payment of the proceeds of a policy into court by the insurance company constitutes a waiver on the part of such company of policy provisions requiring written assignments. Metropolitan Life Insurance Co. v. Dunne, D.C.S.D.N.Y.1931, 2 F.Supp. 165. There can be differences in the situation where a party claims by assignment rather than beneficiary. 29 Am.Jur.Sec. 493, p. 402. Sometimes acts of the insured which may fail to make a change in beneficiary, may nevertheless be held to have made an assignment of the policy. Petty v. Mutual Benefit Life Ins. Co., Iowa 1944, 15 N.W. 2d 613. There are also cases under certain types of benefit certificates where apparently the insured can only accomplish his purpose by a change of beneficiary. Brown v. Grand Lodge, 1890, 80 Iowa 287, 45 N.W. 884, 20 Am.St.Rep. 420. An assignment of a policy will give the proceeds to the assignee without a change of beneficiary. Andrew v. Bankers Life Co., 1932, 214 Iowa 573, 240 N.W. 215. In the instant case the defendant, Floyd B. Bennett, under the endowment provisions of the policy could have made the proceeds available either by change of endowment recipient or by assignment of the policy. Mrs. Wanamaker claims by transfer and assignment, so that the matter of change of endowment recipient is not involved. In some cases like Andrew v. Bankers Life Co., 1932, 214 Iowa 573, 240 N.W. 215, an assignment can be contractual in nature and based upon valuable consideration, but in other cases, like the instant case, there is no valuable consideration involved and the transaction is a completed gift. It is of course, well settled that a completed gift, cannot be attacked for lack of consideration. Stonewall v. Danielson, 1928, 204 Iowa 1367, 217 N.W. 456.

■ It is well settled that in order to constitute a gift inter vivos there must be (1) the intent of a donor to make a gift at the present time; and (2) a delivery of the property with intent to make a gift; and (3) relinquishment of all right and dominion over the thing given. In re Brown's Estate, 1901, 113 Iowa 351, 85 N.W. 617; Tucker v. Tucker, 1908, 138 Iowa 344, 116 N.W. 119; Runnels v. Anderson, 1919, 186 Iowa 1370, 173 N.W. 91; Taylor v. Grimes, 1937, 223 Iowa 821, 273 N.W. 898; Woodward v. Woodward, 1936, 222 Iowa 145, 268 N.W. 540. The troublesome question in a good many cases of claimed inter vivos gifts is the matter of delivery. Sinift v. Sinift, 1939, 284 N.W. 91, opinion on rehearing, 1940, 229 Iowa 56, 293 N W. 841. In the instant case there was the intent of the donor to make a gift at the time, accompanied by manual delivery of the policy and relinquishment of control and dominion over the policy.

The parties are in dispute as to whether an insurance policy can be orally assigned; and, as to the presumption if any arising from possession of the policy; and, as to the burden of proof and as to the quantum of proof.

■ At common law an insurance policy was not, at law, assignable, because of the general rules prohibiting the assignment of choses in action. However, now by either court decisions or statutes, choses in action are assignable. 29 Am.Jur. § 492, p. 401. In Iowa common law rule that choses in action were not assignable was early changed by a statute which now appears as § 9451 of the 1939 Code of Iowa. That section provides as follows: "Bonds, duebills, and all instruments by which the maker promises to pay another, without words of negotiability, a sum of money, or by which he promises to pay a sum of money in property or labor, or to pay or deliver any property or labor, or acknowledges any money, labor, or property to be due, are assignable by indorsement thereon, or by other writing, and the assignee shall have a right of action thereon in his own name, subject to any defense or counterclaim which the maker or debtor had against any assignor thereof before notice of such assignment."

■ An insurance policy is such a chose in action as is assignable. Andrew v. Bankers Life Co., supra; Petty v. Mutual Benefit Life .Ins. Co., supra. While it was first held in Iowa that a verbal assignment of a chose in action was not good, such earlier cases were overruled by a number of later cases, and the rule now is that a verbal assignment of a chose in action is good. Seymour v. C. Aultman & Co., 1899, 109 Iowa 297, 80 N.W. 401. An insured may assign a life insurance policy as a gift. Petty v. Mutual Benefit Life

Ins. Co., supra; 38 C.J.S., Gifts, § 53, p. 838. In the case of Petty v. Mutual Benefit Life Ins. Co., just cited, the Iowa Supreme Court states that in so far as any previous cases hold that an old line life insurance policy is not such property as may be the subject of a gift, the same are overruled. In Iowa it is the law that an oral assignment of the proceeds of life insurance is good. In re Paul's Estate, 1942, 231 Iowa 1078, 3 N.W.2d 186.

It is the claim of the defendant, Nellie Wanamaker, that because she had possession of the policy, that such possession gave rise to a presumption of ownership, and that the burden of proof was upon Mr. Bennett to establish his ownership to it. While in certain types of cases possession of personal property gives rise to a presumption of ownership, yet in Iowa the possession by an alleged donee of personal property which had been originally bought and acquired by the alleged donor, does not give rise to a presumption of a gift. Roberts v. Morse, 1921, 190 Iowa 1344, 181 N.W. 678; Malcor v. Johnson, 1937, 223 Iowa 644, 273 N.W. 145. In the instant case the burden of proof was upon the defendant, Nellie Wanamaker, to establish the gift. Roberts v. Morse, supra; Malcor v. Johnson, supra.

In regard to the quantum of proof, it is the contention of the defendant, Floyd B. Bennett, that it is not sufficient for the defendant, Nellie Wanamaker, to establish the gift by a preponderance of the evidence, but that a greater quantum of proof is required. It is the rule in Iowa that where a party claims under oral arrangements with a person since deceased, relative to his insurance policies, that such arrangements must be established by clear, convincing and satisfactory evidence. In re Hazeldine's Estate, 1938, 225 Iowa 369, 382, 383, 280 N.W. 568, 575; Shepherd v. Pacific Mutual Life Ins. Co., 1941, 230 Iowa 1304, 300 N.W. 556, 559. While some courts have required only that gifts inter vivos be established by the preponderance of the evidence, yet the Iowa Supreme Court has stated the rule to be that gifts inter vivos must be established by a greater quantum of proof. Bosserman v. Watson, 1942, 230 Iowa 627, 298 N.W. 804 (Clear, convincing and satisfactory evidence). While in most of the inter vivos gift cases in which the Iowa Supreme Court has required a greater quantum of proof than a preponderance of the evidence, the alleged donor is deceased, yet in a case where the alleged donor was living the Iowa court stated that the alleged donee must establish the gift by "direct, positive, express, and unambiguous" evidence. Wilson v. Wilson, 1896, 99 Iowa 688, 68 N.W. 910, 911. Thus, in the instant case the burden was upon the defendant, Nellie Wanamaker, to establish the gift of the policy by direct, positive, express and unambiguous evidence, and it is the holding of the Court that she has so established it. The Iowa rule requiring in certain cases a greater quantum of proof than a preponderance of the evidence, is limited to cases in equity, for in law cases in Iowa there is but one quantum of proof, and that is preponderance of the evidence. Jamison v. Jamison, 1900, 113 Iowa 720, 84 N.W. 705. In the instant case the policy in question was delivered to the defendant, Floyd B. Bennett, while he was a resident of the state of Nebraska. The gift of the policy was made in the State of Iowa while both claimants were residents of Iowa. Both parties in their briefs and arguments rely upon Iowa cases and the applicability of the Iowa law to the situation, and that is the law that has been applied. It would appear, however, that the result would be the same if the law of Nebraska were applied. Brown v. Ehlers, 1936, 130 Neb. 918, 267 N.W. 156; Dvorak v. Kucera, 1936, 130 Neb. 341, 264 N.W. 737. Inter vivos gifts are included within the scope of Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. While in the instant case it would not affect the outcome of the case, it has been assumed that the settled state rule as to the degree of proof required, and as to presumptions is to be applied. See 7 Cyclopedia of Federal Procedure, § 3198, p. 284.