PENN MUTUAL LIFE INSURANCE COMPANY, Appellee, v. ELEANOR MULVANEY, Appellee, MARY MULVANEY, Appellant.

No. 43193.

926

March 10, 1936.

Rehearing Denied July 31, 1936.

Guy A. Miller, for appellant.

Henry & Henry, for plaintiff-appellee.

Kern & Faville, for defendant-appellee.

Albert, J.—This action is by way of interpleader on an insurance policy issued by the Penn Mutual Life Insurance Company, and Eleanor Mulvaney and Mary Mulvaney are defendants. On the commencement of the action the Penn Mutual Company confessed liability on the policy in the sum of $5,000, subject to certain deductions which are not in dispute, and paid the balance into the hands of the clerk of the court. The action then resolved itself, under the pleadings, into a question of which of the two defendants was entitled to the money thus paid into the hands of the clerk of the court.

On the 2d day of June, 1920, a policy was issued on the life of John T. Mulvaney, and the beneficiary named was "Eleanor Mulvaney, his wife, if she survive him; otherwise his executors, administrators or assigns. The right to change the beneficiary is reserved by the insured." On the 17th day of June, 1920, in due

form, John T. Mulvaney changed the beneficiary under said policy to "my sister, Mary Mulvaney, if she survive me; otherwise to my wife, Eleanor Mulvaney, if she survive me; otherwise to my executors, administrators or assigns. The right to change the beneficiary is reserved to me." On the 27th day of November, 1933, in due form, John T. Mulvaney again changed the beneficiary, by proper writing filed with the company, which recited: "I have changed the beneficiary under the above policy making it payable to my wife, Eleanor Mulvaney, if she survive me; otherwise to my executors, administrators or assigns. The right to change the beneficiary is reserved to me."

John T. Mulvaney died on the 20th of December, 1933.

On the face of the record at this point, the wife, Eleanor Mulvaney, is presumably entitled to the benefits of this policy, by reason of the last change of beneficiary. Mary Mulvaney, however, assaults this right by pleading, first, that at the time of the last change of beneficiary John T. Mulvaney was of unsound mind; and, second, that the execution of such change of beneficiary was brought about by undue influence. Later, by amendment to the pleading during trial, she asserted that, after the policy had been changed the first time, John T. Mulvaney made a gift of the same to Mary Mulvaney, and that such gift was completed, and that by his so doing Mary Mulvaney became the absolute and unqualified owner of said policy, and that after this occurred John T. Mulvaney had no power or right to change the beneficiary.

▉▉▉ As to the question of undue influence, the rules governing the same are well settled in this state. The burden of proving undue influence is upon the person alleging it, and he must also prove that it was in operation at the very time the instrument was executed. Our last expression on this proposition will be found in Arndt v. Lapel, 214 Iowa 594, 243 N. W. 605, where our previous cases are cited. Mere opportunity to exercise undue influence is not sufficient in itself to sustain such burden of proof. See McNeer v. Beck, 205 Iowa 196, 217 N. W. 825. To make undue influence, it must be such as to destroy the free agency of the person, and the instrument when drawn must be such that it does not express the will and intention of the maker, but, in reality, expresses the will and intention of the one who is alleged to have exercised the undue influence. Henderson v. Jackson, 138 Iowa 326, 111 N. W. 821, 26 L. R. A. (N. S.) 479;

928

In re Estate of Mott, 200 Iowa 948, 205 N. W. 770. We have also said that the mere relationship of husband and wife does not create a confidential relationship sufficient to show undue influence. Our last expression on this will be found in McNeer v. Beck, 205 Iowa 196, 217 N. W. 825. Even the giving of advice or suggestion by the person to be benefited by the execution of the instrument does not amount to undue influence. McNeer v. Beck, 205 Iowa 196, 217 N. W. 825; Arndt v. Lapel, 214 Iowa 594, 243 N. W. 605. These cases lay down the rules which have many times been pronounced by this court on this question.

As we turn to the record in this case, we find nothing substantial on which a charge of undue influence could be sustained here. The defendant Mary Mulvaney has not sustained the burden of proof she carried on this proposition.

As to the question of mental incapacity, the rules are equally well settled. In the case of Byrne v. Byrne, 186 Iowa 345, at page 366, 172 N. W. 655, 662, we said:

"The law recognizes no degree of mental decay as sufficient to deprive the person of testamentary capacity which does not deprive him of intelligent comprehension of the estate he is devising, or of his capacity to appreciate the nature and effect of the distribution he makes of such estate. His memory may be impaired; he may lack the mental qualities or alertness of youth; he may not be able to transact business generally, or to enter into complicated contracts, and still be able to make a valid will."

This summarizes the Iowa cases which are therein cited as our conclusion on this kind of a question.

Mere weakness of mental power will not make mental incapacity if the person retains mind enough to know and comprehend in a general way the nature and extent of his estate, the natural objects of his bounty, and the distribution he desires to make of his property. Cookman v. Bateman, 210 Iowa 503, 231 N. W. 301; Kerkhoff v. Monkemeier, 188 Iowa 103, 175 N. W. 762. It is a well-recognized rule that a witness, whether expert or non-expert, should not be permitted to testify that the deceased did not have intelligence enough or mental capacity sufficient to comprehend and understand the transactions involving the disposition of property, by will or otherwise, because this is

the very question the jury has to decide. See In re Will of Jahn, 184 Iowa 416, 165 N. W. 1021, and cases therein cited.

With these rules in mind, and remembering that the burden is on Mary Mulvaney to prove, by a preponderance of the evidence, that John T. Mulvaney was mentally incompetent at the time the last change of beneficiary was executed, we have carefully read the record in this case and reach the conclusion, as did the district court, that she has not sustained this burden.

**∎∎∎** The first part of appellant's argument is devoted to the question of whether or not a gift of this policy was made to Mary Mulvaney at the time the first change of beneficiary was made. The principal reliance of the appellant on this proposition is bottomed upon decisions from the states of California, New Jersey, and Pennsylvania. In the investigation of this case, however, we find that the question has been settled by a decision of our own court.

Mary Mulvaney testified:

"I knew in 1920 my brother John secured a policy of insurance for $5,000, in which he made me the beneficiary. John came over to the house and said to me, 'Mary, I am giving you my life insurance policy. If anything happens to me, you look to this.' He handed me the policy at the time, and I said, 'Thank you.' I put it upstairs in a cedar chest, and kept it there about three or four months. Then John came over to the house one day and said, 'Mary, I don't think the house is a safe place for this policy. I will take it down and put it in the vault for safe-keeping.' I thanked him and got the policy and gave it to him. I have not seen it since that time until this. He never said anything about changing the beneficiary, and I did not know it was changed until this litigation started about the policy." On cross-examination she says: "John came to my house and told me that he was giving me a policy of insurance in 1920. He told me what it was. He said, 'This is my life insurance policy, Mary,' and he said, 'You take care of it. I want you to have it.' I didn't examine it. He told me it was his life insurance policy and he was giving it to me." She further testified that no one was present at this transaction except herself and John.

In the case of Brown v. Grand Lodge A. O. U. W., 80 Iowa 287, 289, 45 N. W. 884, 20 Am. St. Rep. 420, we had this iden-

tical situation. The policy in the Brown case was delivered to the beneficiary named in the policy. It was retained by that beneficiary for some eight years, when the insured married, and he then obtained the certificate from the first-named beneficiary under the representation that he desired to change the policy and make a sister of the first beneficiary a joint beneficiary. On receipt of the policy he had it changed to make the new wife sole beneficiary. He died the next year. The record in the case as to the claim of the first beneficiary was that the policy, when delivered to her, was a gift, and the insured had no power to change the beneficiary. In the Brown case, as in the case at bar, the company conceded its liability, and the case then resolved itself into a fight between the two beneficiaries as to who should receive the proceeds of the policy. The testimony of the first beneficiary in that case was: "My father gave it to me. He said, 'Here, I give you this now, as a gift. If I haven't done anything more for you I will do that much, and try and keep it paid for.'" A witness testified, with reference to the delivery of the policy: "He gave it to my daughter in my presence, saying to her, 'Daughter, I give you this as a gift. I have never been a father to you. I will try now and keep this paid up for you. I never did anything else for you.'"

This was the testimony in the Brown case on which the first beneficiary claimed a gift of the policy. The same claim was made in that case as in this, that, there having been a completed gift of the policy to the first-named beneficiary, the insured lost all right to afterwards change the beneficiary. With reference to this, we said:

"It should be conceded at the outset that James Grace [the insured] obtained the certificate from plaintiff by misrepresentation or fraud. We regard this fact as found by the district court, and we must consider the case with it in full view. With this point settled at the outset, we dispose of much said in argument in relation thereto, and bring ourselves, to what we regard as the controlling issue in the case.

"Appellant concedes that if James Grace had procured the certificate with plaintiff's name therein as the beneficiary, and had retained possession thereof, he would have had the right to surrender it, and take a new certificate with another person as beneficiary, because he could then surrender the certificate, as he

was required to do by the laws of the order. But it is urged that in this case he had parted with the possession of the certificate, and made a gift thereof to the plaintiff, by which she obtained a vested right or interest therein; and this is urged as the distinguishing feature of the case. Inasmuch as the certificate was in the possession of James Grace, and by him surrendered when the new certificate issued, the force and effect of such possession is sought to be avoided by the fact that the posssesion was fraudulent, and that James Grace could legally take no advantages from such possession. * * * If she had such a vested interest therein that she could legally have refused her father the possession thereof for the purpose of changing the beneficiary, as he did, we should strongly incline to the view—with the situation of this case as to the parties actually in interest—that he could not defeat such right by such indirect or fraudulent methods. If, on the other hand, she had no such interest in the certificate as would justify her in retaining it from him, if he desired it for such purpose, then she suffered no prejudice from the fraud, and is in no position to complain, or at least she is not in a position, because of fraud, to claim as absolutely hers what before was only conditionally so. What, then, were the rights of the plaintiff because of the fact of her possession of the certificate? The authorities will be better understood if we keep in view the effect of naming a person in a certificate as beneficiary without surrendering to him the possession, which is that it gives to such person no rights before the death of the assured, and that the certificate is revocable at the pleasure of the assured, under the provisions of the laws of the society. The authorities on the point are uniform, and are not questioned in this case. How, then, does the mere delivery of the certificate to the beneficiary change the right? It being only the evidence of what in law is a mere expectancy, the delivery of it conveys no present right; for no present right exists. The assured has no vested property rights that he can convey. * * * 'All that a beneficiary has during the life-time of a member, owing to his right of revocation, is a mere expectancy dependent upon the will and pleasure of the holder of the certificate. This expectancy is not property.' * * * The case of Byrne v. Casey [70 Tex. 247], 8 S. W. 38, is a Texas case, and involves the effect of a gift; and that particular point was urged, as in this case. Byrne took a certificate in a benefit association, with his wife therein as beneficiary, and delivered to

her the certificate, which she kept for about one year, and paid several assessments thereon, and delivered it to the defendant Casey for safe-keeping. Byrne, without the knowledge or consent of his wife, withdrew the certificate from Casey, surrendered the same, and took a new one with Casey and Swasey as beneficiaries. Mrs. Byrne had no knowledge of any change in the certificate until after the death of Byrne. * * * The court held in favor of those named in the latter certificate, and placed its holding on the rule that 'the beneficiaries named have no perfect or vested rights in the certificate; that the rules as to change of the beneficiaries were for the protection of the order; and that the member, under the by-laws, could determine the course of the benefit fund against those named as beneficiaries in the certificate.''

The court said:

''The facts of that case are stronger in favor of Mrs. Byrne than are those of this case in favor of the plaintiff.''

The Brown opinion recognized the Pennsylvania case of Fisk v. Equitable Aid Union, 11 A. 84, and said:

''These cases seem quite conclusive of the question before us. Whatever consequences should attach to the fraudulent acquirement of the certificate, it could not have the effect of creating a vested right where none existed before. If plaintiff, with the possession of the certificate, had no such right therein as would defeat the right of her father to change the beneficiary, she had no such right as would justify her retention of it if he demanded it for that purpose. * * * Some of the authorities cited by appellant we have cited in support of our holding. Others are unlike this case as to facts; some of them being cases where the insurance was in 'old line companies,' wherein a different rule is conceded because of vested rights from the issuing of the policy.''

The sum total of the holding in the Brown case is, first, that the beneficiary in an insurance policy where the right to change the beneficiary is reserved has no vested interest in the policy; and, second, that all that a beneficiary has during the lifetime of the member, owing to the right of revocation, is a mere expectancy dependent upon the will and pleasure of the

holder of the certificate, and this expectancy is not property. If the expectancy is not property, then the insured has nothing which would be the subject of a gift. The substance of the holding in the Brown case is that, under testimony practically identical with the testimony we have in the case at bar, there was no gift.

It is to be noted in the Brown case that the very question that is raised in this case is decided. In that case the claim of the first beneficiary was that she received the policy as a gift, and a large part of the opinion is devoted to this question. The district court that tried the Brown case held in favor of the second beneficiary, and gave her judgment accordingly. This court confirmed that judgment. It seems, therefore, that the Brown case is decisive of the case before us, and that Mary Mulvaney is not entitled to the proceeds of this life insurance policy. So held the district court, and we agree with this conclusion.—Affirmed.

ANDERSON, PARSONS, RICHARDS, KINTZINGER, and HAMILTON, JJ., concur.