**In the Matter of the ESTATE OF
Archard A. CRABTREE,
Deceased,**

**Mary Ann Crabtree, Appellant.**

No. 95–399.

Supreme Court of Iowa.

June 19, 1996.

Christopher F. O'Donohoe, New Hampton, for appellant.

Richard T. Tekippe, New Hampton, for appellee.

Considered by McGIVERIN, C.J., and LAVORATO, SNELL, ANDREASEN, and TERNUS, JJ.

TERNUS, Justice.

Appellant, Mary Ann Crabtree, seeks damages resulting from the cashing of a certificate of deposit in the name of her father, Archard A. Crabtree, and payable on his death to Mary Ann. This transaction was consummated before Crabtree's death by Sherry Wurzer, Mary Ann's sister and Crabtree's daughter, who was acting under a power of attorney. Because we find no merit in Mary Ann's challenge to Sherry's action, we affirm the district court judgment dismissing Mary Ann's claim.

I. *Background Facts and Proceedings.*

On March 4, 1991, Crabtree deposited $20,000 in a one-year certificate of deposit, payable on his death to Mary Ann. In October 1991, Crabtree had a stroke. After his stroke, he had problems with balance and vision, and moved to a nursing home.

In November 1991, Crabtree executed a plenary power of attorney, appointing Sherry his attorney-in-fact. Pursuant to the power of attorney, Sherry had "full power and authority to manage and conduct all of [Crabtree's] affairs, with full power and authority to exercise or perform any act, power, duty, right or obligation" that Crabtree had the legal right, power or capacity to exercise or perform. The appointment included the power and authority "[t]o open, maintain or close bank accounts, ... savings and checking accounts; to purchase, renew or cash certificates of deposit. ..."

The cost of Crabtree's care varied depending upon his medical condition; expenses ran between $1600 and $2000 per month. By March 1992, the cash on hand was insufficient to continue into the next month. At the same time, Crabtree expressed a desire to purchase a $4000 burial contract and a $1700 monument. Crabtree's assets then consisted of a one-half interest in a 200–acre farm and several certificates of deposit. All of the certificates matured after March 4, 1992, except the one payable at death to Mary Ann.

The district court found that in consultation with Crabtree and with his agreement, Sherry cashed the $20,000 certificate dated March 4, 1991, and placed the money in Crabtree's checking account. Sherry chose this certificate to cash because it was mature and the only one that could be cashed without a penalty for early withdrawal. She then purchased the burial contract and monument Crabtree wanted.

Crabtree died in December 1992. In his will, executed in 1989, he appointed his daughters, Mary Ann and Sherry, as co-executors; any assets remaining after the payment of his legal obligations were to be distributed equally to Mary Ann and Sherry. At the time of his death, Crabtree still owned certificates of deposit in excess of $20,000.

Mary Ann filed a claim in probate seeking $20,000. As noted by the district court in its ruling, had Sherry liquidated other certifi-

cates or personal property of Crabtree instead of the $20,000 certificate, Mary Ann would have received the $20,000 certificate when Crabtree died. Thus, the liquidation of the certificate prior to Crabtree's death increased the probate estate by $20,000. As a result, Sherry benefits by $10,000 while Mary Ann loses the same amount.

The district court dismissed Mary Ann's claim, concluding Sherry did not breach her fiduciary duty to Crabtree. On appeal, Mary Ann argues Sherry made a gift to herself by cashing the $20,000 certificate of deposit, a power not granted to Sherry under the power of attorney. Alternatively, Mary Ann contends Sherry breached a duty to Mary Ann under the power of attorney not to defeat Crabtree's "contractual disposition" of his property unless it was necessary for his support or maintenance. We find no merit in the first argument and conclude the second issue was not raised in the district court. Therefore, we affirm.

## II. *Scope of Review.*

 Claims in probate are triable at law. *In re Estate of Voelker,* 252 N.W.2d 400, 402 (Iowa 1977). Consequently, we review for correction of errors of law. Iowa R.App. P. 4. We are bound by the trial court's findings of fact provided they are supported by substantial evidence. *Voelker,* 252 N.W.2d at 402.

## III. *Did Sherry Breach her Duty to Crabtree Under the Power of Attorney?*

A. *Sherry did not have the power to make a gift.* Mary Ann first asserts Sherry did not have the right to make gifts pursuant to the power of attorney. We agree.

 "The established rule is that a power of attorney must be strictly construed and the instrument will be held to grant only those powers which are specified." *Bloom v. Weiser,* 348 So.2d 651, 653 (Fla.Dist.Ct.App. 1977); *accord Whitford v. Gaskill,* 119 N.C.App. 790, 460 S.E.2d 346, 348 (1995), *cert. granted,* 342 N.C. 197, 463 S.E.2d 250 (1995); *see Aboodely v. Cavras,* 221 N.W.2d 494, 501–02 (Iowa 1974) (construing power of

attorney as granting only powers specified therein). Because the power of attorney form used by Crabtree did not expressly grant Sherry the power to make a gift, she did not have that power. *See Aiello v. Clark,* 680 P.2d 1162, 1166 (Alaska 1984); *Johnson v. Fraccacreta,* 348 So.2d 570, 572 (Fla.Dist. Ct.App.1977); *In re Estate of Rolater,* 542 P.2d 219, 223 (Okla.App.1975).

B. *Sherry did not breach her duty to Crabtree under the power of attorney.* Mary Ann argues that by cashing the $20,000 certificate and thereby increasing the probate estate, Sherry made a gift to herself. We disagree.

 We have held in other contexts a gift is made when the donor has a present intention to make a gift and divests himself "of all control and dominion over the subject of the gift." *Taylor v. Grimes,* 223 Iowa 821, 826, 273 N.W. 898, 901 (1937); *see Kirchner v. Lenz,* 114 Iowa 527, 530, 87 N.W. 497, 498 (1901) (a gift is anything "which is voluntarily transferred by one person *to another* without compensation") (emphasis added); *Fender v. Fender,* 285 S.C. 260, 329 S.E.2d 430, 431 (1985) (attorney in fact may not use his position for his "personal benefit in a substantially gratuitous transaction"). The transfer of dominion and control must be actual—a present, not a future, transfer. *Reeves v. Lyon,* 224 Iowa 659, 662, 277 N.W. 749, 751 (1938); *Jones v. Luing,* 152 Iowa 276, 277, 132 N.W. 371, 371 (1911). Here Crabtree's "dominion and control" over these funds was just as great after the transaction as before, and Sherry's ability to use the funds for herself personally was just as restricted. Sherry benefited in no way from this transaction at the time it occurred.

 The trial court found the $20,000 certificate was the only mature certificate and it was cashed to provide needed support to Crabtree. There is substantial evidence to support these findings. Thus, any benefit to Sherry was unintentional and merely fortuitous. There was no reason to believe at the time of the transaction that Sherry would profit from it in the future. Had Crabtree lived longer, eventually all his certificates would have been used to pay his expenses. Moreover, Crabtree was competent to make

changes to his will, so there was no certainty that Sherry would eventually benefit from this transaction as a beneficiary of the estate. Thus, we conclude Sherry did not make a gift to herself by cashing the $20,000 certificate of deposit.

Mary Ann's real complaint is that Sherry did not cash other certificates of deposit before she cashed the one payable on death to Mary Ann. As the trial court found, however, cashing other certificates of deposit would have reduced the monies available for payment of Crabtree's expenses because he would have had to pay an early withdrawal penalty. Thus, it would not have been in Crabtree's financial interest to cash a different certificate. Sherry, as Crabtree's fiduciary, was required to act in *his* best interests. *See Rolater*, 542 P.2d at 223 ("in exercising granted powers, the attorney is bound to act for the benefit of his principal avoiding where possible that which is detrimental"); *Fender*, 285 S.C. 260, 329 S.E.2d at 431 ("an agent must further the principal's interests"). Although not determinative, we also note Crabtree approved of Sherry's cashing of the certificate.

In summary, we conclude Sherry's cashing of the certificate of deposit did not result in a gift to her. Although her interest in the estate was ultimately increased, there is no evidence this result was anything other than fortuitous. Additionally, Sherry acted in Crabtree's best interest, and with his approval, in cashing a mature certificate of deposit rather than one which would have required payment of a penalty. For these reasons, Sherry did not breach her fiduciary duty to Crabtree.

## IV. *Did Sherry Violate a Duty to Mary Ann Under Crabtree's Power of Attorney?*

On appeal Mary Ann argues that Sherry owed her a duty under the power of attorney "much like the rights of a donee beneficiary under the doctrine of third party beneficiaries." This argument was not made to the district court.

Although the district court ruled Sherry's "fiduciary duty was to Mr. Crabtree, not Mary Ann Crabtree," this statement was made in the context of discussing whether Sherry breached her fiduciary duty by making a gift to herself. There is nothing in the record to indicate the district court had a third-party-beneficiary theory in mind when this statement was made. At trial, Mary Ann simply claimed Sherry "engaged in self-dealing as [a] fiduciary and effectively made a gift to herself." No mention was made to the district court of the theory of third party beneficiary.

We conclude the issue of third party beneficiary was not raised in the trial court. *See Kanzmeier v. McCoppin*, 398 N.W.2d 826, 829–30 (Iowa 1987) ("trial court ... did not mention the concept of third party beneficiary, nor did either party advance this theory in its trial brief"). Because Mary Ann did not present this issue at trial, it is waived. *See Hagarty v. Dysart–Geneseo Community Sch. Dist.*, 282 N.W.2d 92, 96 (Iowa 1979) ("we cannot permit her claim to be tried here on a theory not urged in the trial court"); *General Expressways, Inc. v. Iowa Reciprocity Bd.*, 163 N.W.2d 413, 417 (Iowa 1968) (we only consider issues argued to and considered by the trial court).

**AFFIRMED.**