# IN THE COURT OF APPEALS OF IOWA

No. 14-0039
Filed November 26, 2014


**THE CINCINNATI LIFE INSURANCE COMPANY, an Ohio Corporation,**
   Petitioner,

**v.**

**ESTATE OF MARILYN MANGINO, THOMAS P. GASSMAN,**
   Respondents,

and

**POLLY SKOCELAS and RHETT RESWIK,**
   Respondents-Appellees,

and

**AARON GASSMAN, ADAM GASSMAN, ALEX, GASSMAN, and ANDY GASSMAN,**
   Respondents-Appellants.
_____

   Appeal from the Iowa District Court for Dubuque County, Michael J.

Shubatt, Judge.


   Aaron, Adam, Alex, and Andy Gassman appeal from the district court's

decision voiding a change of designation of beneficiaries on two annuities.

**AFFIRMED.**


   Roger J. Kurt, Dubuque, for appellants.

   Todd J. Locher of Locher & Locher, P.L.C., Farley, for appellees.


   Heard by Danilson, C.J., and Doyle and Tabor, JJ.

**DOYLE, J.**

Acting under a power of attorney executed by Marilyn Mangino, Marilyn's son-in-law Thomas Gassman, as successor attorney-in-fact, executed change-of-beneficiary forms to add his four sons (Marilyn's grandsons) as beneficiaries to two of Marilyn's annuities. The district court voided Gassman's change of designation of beneficiaries, and Marilyn's grandsons appeal. We affirm.

### I. Background Facts and Proceedings.

Marilyn Mangino was born in 1928. She married Walter Pfab, and they had three children: Gary Pfab, Polly Skocelas, and Sherry Gassman.

In 2004, Marilyn was diagnosed with Alzheimer's disease. In May 2004, Marilyn, aging and beginning to suffer the effects of Alzheimer's, executed a general power of attorney.[1] Sherry was named to act as Marilyn's primary attorney-in-fact, and Thomas Gassman, Sherry's husband, was nominated as successor attorney-in-fact. The power of attorney was effective immediately.

Later that year, Marilyn executed her last will and testament. It provided that, after payment of debts, 30% of her estate was to be divided equally between her then living grandchildren, with the remaining 70% to be divided equally between Sherry, Gary, and Polly. Sherry was named executor.

Additionally, Marilyn purchased an annuity through Cincinnati Life Insurance Company (Cincinnati Life). She purchased another annuity from Cincinnati Life in July 2005. Both of the annuities designated Sherry and Polly as

---

[1] The Iowa State Bar Association Official Form No. 120, revised in January 1999, was used.

primary beneficiaries to share equally. No contingent beneficiaries were designated.[2]

In 2006, Sherry discovered she had cancer and had only two years to live. In late 2006, Marilyn was unable to live by herself, and she moved in with Sherry and Thomas for a short time. By February 2007, Marilyn required nursing care and moved to a nursing home. Sherry passed away in 2008, and Thomas then became Marilyn's successor attorney-in-fact under the power of attorney. By this time, Marilyn was incapable of handling her financial affairs. Accordingly, she was incapable of expressing her intent regarding inheritance or distribution under a beneficiary designation.

In August 2009, as successor attorney-in-fact, Thomas submitted change-of-beneficiary requests to Cincinnati Life for each of the annuities. The request removed Sherry as a beneficiary and divided her 50% share equally between Thomas and Thomas and Sherry's four sons Aaron, Adam, Alex, and Andy Gassman, with each to receive 10%. Polly's 50% interest remained unchanged. In December 2010, Thomas once again submitted change-of-beneficiary requests, adjusting the percentages and listing one additional grandchild. The new designations were as follows: 32.5% to Polly, 17.5% to Polly's son Rhett Reswik, and 10% each to Thomas, Aaron, Adam, Alex, and Andy. Cincinnati Life changed the beneficiaries as directed.

---

[2] On both annuity application forms, the space provided for designation of a contingent beneficiary was left blank. Policy service forms, signed by Marilyn and Sherry in March 2006, designated Sherry and Polly as beneficiaries of the annuities. Again, the spaces provided for designation of contingent beneficiaries were left blank.

Marilyn died in January 2011. The annuities constituted the bulk of her estate. In July 2011, Cincinnati Life filed a petition for interpleader requesting the court allow Cincinnati Life "to interplead said proceeds and determine the appropriate persons to receive said funds." In October 2011, the court entered an agreed order permitting Cincinnati Life to pay all annuity proceeds to the attorney for Marilyn's estate to hold in trust pending the court's ruling on the interpleader action. Cincinnati Life then paid proceeds totaling $249,093.63 to the estate's attorney to be held in trust.

In September 2012, the court granted partial summary judgment, finding Thomas "as the successor attorney-in-fact was precluded from making any gift to himself." The court nullified the 10% interest created in Thomas's favor "as a result of his actions as power of attorney in changing the beneficiary designations on his mother-in-law's annuity." Thomas did not, and does not, contest this ruling.

In August 2013, the case was tried to the district court on stipulated facts and testimony. In its decision, the court characterized "the real issue" to be whether Thomas had legal authority to change the beneficiary designation on Marilyn's annuities. The court found that nothing in the power of attorney authorized Thomas to change the beneficiary designations made by Marilyn. The court concluded the changes were therefore void and that the beneficiary designations as they existed prior to Thomas's changes controlled. Regarding the 50% share designated for Sherry, the court found the annuity plan documents made no provision for Sherry's heirs to receive her share in the event she predeceased Marilyn, which she did. The court ruled Polly to be the sole

beneficiary of the annuity proceeds, and it ordered the proceeds to be distributed to her.

Aaron, Adam, Alex, and Andy (the Gassmans) now appeal.

## II.  Scope and Standards of Review.

Interpleader is an equitable action.  Iowa R. Civ. P. 1.251; *see also C.F. Sales, Inc. v. Amfert, Inc.*, 344 N.W.2d 543, 550 (Iowa 1983).  We review equity cases de novo.  Iowa R. App. P. 6.907.  We give weight to the fact findings of the district court, especially when considering witness credibility, but we are not bound by such findings.  Iowa R. App. P. 6.904(3)(g).

## III.  Discussion.

On appeal, the Gassmans argue that under a liberal reading of the language of the power of attorney, Thomas was granted the authority to change the beneficiaries of the annuities.  First, they reference paragraph 2(H) of the power of attorney, which authorizes the attorney-in-fact

> [t]o invest, re-invest, sell or exchange any assets owned by me and to pay the assessments and charges therefore; to obtain and maintain life insurance upon my life or upon the life of anyone else; to obtain and maintain any other types of insurance policies; to continue any existing plan of insurance or investment.

The Gassmans argue the word "maintain" should be construed broadly so as to empower Thomas to "repair and correct problems that arose."

Contrary to the Gassmans' position, "[t]he established rule is that a power of attorney must be strictly construed and the instrument will be held to grant only those powers which are specified."  *In re Estate of Crabtree*, 550 N.W.2d 168, 170 (Iowa 1996); *see also* 3 Am. Jur. 2d *Agency* § 27 (2014).  In *Crabtree*, the court held that "[b]ecause the power of attorney form used by Crabtree did not

expressly grant [the named attorney-in-fact] the power to make a gift, [the attorney-in-fact] did not have that power." 550 N.W.2d at 170. Similarly, because paragraph 2(H) of Marilyn's power-of-attorney form does not expressly grant the attorney-in-fact the power to change annuity beneficiaries, Thomas did not have that power.[3] *See id.*

The Gassmans also argue the general grant-of-power clauses of the power of attorney granted Thomas power to change beneficiaries. They reference paragraphs 2 and 3 of the power-of-attorney form. Those provisions provide, in pertinent part:

> 2. <u>Powers of Attorney-In-Fact</u>.
> My Attorney-In-fact shall have full power and authority to manage and conduct all of my affairs, with full power and authority to exercise or perform any act, power, duty, right or obligation I now have or may hereafter acquire the legal right, power and capacity to exercise or perform. . . .
> . . . .
> 3. <u>Construction</u>.
> This Power of Attorney is to be construed and interpreted as a general power of attorney. The enumeration of specific items, rights, acts or powers shall not limit or restrict the general and all-inclusive powers that I have granted to my Attorney-In-Fact. All references to property or property rights herein shall include all real, personal, tangible, intangible or mixed property.

These general provisions do not operate to authorize powers not expressly granted. The language of paragraph 2 was included in the *Crabtree* power of attorney. *See Crabtree*, 550 N.W.2d at 169. In applying the well-established rule

---

[3] We note Iowa recently adopted the Iowa Uniform Power of Attorney Act, to be codified at Iowa Code chapter 633B. *See* 2014 Iowa Acts ch. 1078. Although the Act applies to powers of attorney created before July 1, 2014, it does not apply to an act completed before July 1, 2014; thus, the Act does not apply to this case. *See id.* at § 47 (to be codified at Iowa Code § 633B.403). Had the Act applied, it would have been dispositive of this issue because, under the Act, an agent under a power of attorney may create or change a beneficiary designation only if that authority is expressly granted by the power of attorney. *See id.* at § 26(1)(d) (to be codified at Iowa Code § 633B.201(1)(d)).

of strict construction, the court held the attorney-in-fact did not have a power not expressly granted. *See id.* at 170. Following *Crabtree*, we conclude paragraph 2 did not authorize Thomas to change annuity beneficiaries, a power not expressly granted to him. *See id.* Likewise, we conclude the general grant of power set forth in paragraph 3 did not authorize Thomas to change annuity beneficiaries, a power not expressly granted. *See, e.g.*, *In re Estate of Nicholls*, 960 N.E.2d 78, 83 (Ill. Ct. App. 2011) (construing a provision virtually identical to paragraph 3 and holding the attorney-in-fact had no power to change certificate of deposit beneficiaries when that power was not expressly granted in the power of attorney, explaining a "'catchall' provision will not operate to expand powers not expressly enumerated").

The Gassmans argue paragraph 2(O) of the power of attorney "clearly" granted Thomas the power to make gifts to family members. Paragraph 2(O) authorizes the attorney-in-fact

> [t]o make gifts or any of my property or assets to members of my family; and to make gifts to such other persons or religious, educational, scientific, charitable or other nonprofit organizations to whom or to which I have an established pattern of giving; provided, however, that my Attorney-In-Fact may not make gifts of my property to himself or herself. I appoint <u>N/A</u> of <u>N/A</u> as my Attorney-In-Fact solely for the purpose of determining if a gift of my property to the Attorney-In-Fact appointed and acting hereunder is appropriate and to make any such gifts which are appropriate.

There is no question the Gassmans, Marilyn's grandsons, are members of Marilyn's family. But was Thomas's designating the Gassmans as annuity beneficiaries a gift? We think not. "[A] gift is made when the donor has a present intention to make a gift and divests himself 'of all control and dominion over the subject of the gift.'" *Crabtree*, 550 N.W.2d at 170 (quoting *Taylor v.*

*Grimes*, 273 N.W. 898, 901 (Iowa 1937)).  Assuming arguendo Thomas had the power to change annuity beneficiaries, he did not relinquish that power when he designated the Gassmans as annuity beneficiaries.  The Gassmans had no vested right in the annuity benefits.  At most, they had a mere expectancy in the benefits, and this expectancy is not property.  *See Penn. Mut. Life Ins. Co. v. Mulvaney*, 265 N.W. 889, 893 (Iowa 1936).  If the expectancy is not property, there is no gift.  *See id.*  Paragraph 2(O) of Marilyn's power-of-attorney form did not grant Thomas the power to change the beneficiaries of the annuities.

### IV. Conclusion.

Having concluded Thomas had no power to change the beneficiaries of the annuities, it is not necessary to address the Gassmans' argument that Thomas acted fairly in his dealings.  Nor need we address their forfeiture argument.  For all the above reasons, we affirm the decision of the district court.

**AFFIRMED.**