# IN THE COURT OF APPEALS OF IOWA

No. 24-0380
Filed July 23, 2025

**ROBERT JOHN WINSLOW,**
 Plaintiff-Appellee,

**vs.**

**BENJAMIN H. POOLE, SHERRY POOLE, NATHAN POOLE, and MELISSA POOLE,**
 Defendants-Appellants,

**and**

**IOWA STATE BANK, Trustee of the Ann D. Winslow Declaration of Trust a/k/a Ann D. Winslow Trust and Conservator of Ann D. Winslow, CHARLENE M. WINSLOW, JACOB A. POOLE, SCOTT DAVIS, MARGARET FEHN, SHELLY ERTEL, BETHEL MISSION OF DES MOINES, IOWA, BRITTANY A. WINSLOW, SHANE R. WINSLOW, CHRISTINA R. WINSLOW, SARAH A. WINSLOW, MACKENZIE L. WINSLOW, JOSEPH D. WINSLOW, MORGAN RAE TODD, ANN WINSLOWS ADOPTED OR AFTERBORN GRANDCHILDREN OR STEP GRANDCHILDREN, MILO R. SCHRAM, JANE EDSON, JON DUNLOP and ANN LUNDIN,**
 Defendants.

_____

 Appeal from the Iowa District Court for Polk County, David Porter, Judge.


 Stepchildren of a trust settlor challenge the denial of their motion to dismiss predeath claims by the settlor's son. **REVERSED AND REMANDED FOR DISMISSAL**.

Matthew G. Sease (argued) of Sease & Wadding, Des Moines, and Amanda Green of Takekawa & Green, Ankeny, for appellants.

Aaron W. Ahrendsen (argued) of Eich Werden Steger & Ahrendsen PC, Carroll, for appellee Robert Winslow.

Weijing Wu and Jackson C. Blais of Shuttleworth & Ingersoll, P.L.C., Cedar Rapids, for appellee Iowa State Bank.

Heard at oral argument by Tabor, C.J., and Ahlers and Langholz, JJ.

**TABOR, Chief Judge.**

This interlocutory appeal examines a trust created by Ann Winslow in 1991. At its creation, the revocable trust provided for Ann's son, Robert Winslow, to inherit the remaining assets after her death. But over the years, Ann changed her estate plans to include her stepchildren.[1] Robert now alleges that Ann lacked the testamentary capacity to make those changes and the amendments to her restated trust resulted from undue influence. He also claims tortious interference with inheritance, breach of fiduciary duty, and self-dealing. Although Ann is still living, Robert petitioned to have her restated trust set aside as invalid.

The Pooles moved to dismiss, arguing that Robert failed to state a claim upon which relief can be granted because Iowa law does not allow predeath trust challenges. They also urged that Robert lacks standing to pursue his claims while Ann is alive because he has no current interest in her trust. Finally, they alleged that the district court lacked subject matter jurisdiction over this probate matter. The district court denied the motion and allowed the claims to proceed. The Pooles successfully sought interlocutory appeal and renew their objections.

To start, we agree with Robert that the district court had subject matter jurisdiction to consider this matter. But because Robert's interest in his mother's trust is too speculative and contingent during her lifetime, he lacks standing to bring these claims before her death. Thus, we reverse and remand for entry of an order dismissing his petition.

---

[1] The defendants are three of Ann's stepchildren, Nathan, Melissa, and Benjamin Poole, as well as Benjamin's wife, Sherry. We will refer to them collectively as the Pooles.

## I.      Facts and Prior Proceedings

Robert is Ann's only living child.  Thirty-four years ago, she created the Ann D. Winslow Trust, naming herself as trustee and primary beneficiary.  Under the trust's terms, the trustee has power to distribute income and principal for Ann's health, support, best interest, and welfare.  The trust also listed her living children as secondary beneficiaries.  She directed:

> As of the date of my death, but after providing for the payments, if any, [of debts, expenses, or taxes], the trustee shall divide the remaining trust principal . . . , into equal shares so as to create one share for each then living child of mine, and one share for the living children, collectively, of each child of mine who is then deceased.

That same year, Ann executed a will containing a pour-over provision leaving the residue of her estate to the trust.  Thus, as her only living child, Robert expected to inherit anything left in the trust and the rest of her estate.

In 1996, Ann married Ernest Poole.  They entered a prenuptial agreement that kept their property separate.  Ann had considerably greater assets, according to schedules attached to that agreement.[2]  Her property was worth around a million dollars, while Ernest's assets totaled roughly one-fifth of that amount.

Soon after their marriage, Ann was treated for and survived breast cancer.  But Robert observed changes in her behavior: she became extremely dependent upon Ernest and began experiencing cognitive issues and memory loss.  According to Robert, the cognitive and memory complaints also appear in her medical records from the time.

---

[2] In his petition, Robert recalled that before her marriage to Ernest, his mother "was a bright, highly capable, individual who was employed as the secretary to the President of the International Division of Pioneer."

After her bout with cancer, Ann began tweaking her estate plan. The first amendment, in 1998, added Ernest as secondary trustee. It also added Ernest and his descendants as residuary beneficiaries, leaving Robert as the main beneficiary of the balance of Ann's estate. Ann also named Ernest as her agent with general power of attorney, effective immediately, with Robert as successor agent.

The next major change came in 2010, when Ann executed a new will naming Ernest as her personal representative and giving her personal property to Robert and her stepchildren. She retained the pour-over provision leaving the residue of her estate to the trust. According to Robert's petition, she also removed him as beneficiary of two Sun America investment accounts, substituting Ernest as primary beneficiary and her stepchildren as contingent beneficiaries. Those accounts have a present value of over $300,000. At some point, Ann also changed the beneficiaries of her Vanguard IRA to the three stepchildren. She also left her house in Alabama to the stepchildren.[3]

In his petition, Robert provided examples of Ann's failing memory. For instance, in 2013, Ann called Robert to say she had gotten lost driving from his house to her stepson Nathan's property in Booneville. After Robert guided her to the Pooles' place, Ernest told him not to tell anyone, because it was "very embarrassing to her." Robert recalled Ann was upset and confused. A couple of years later, Ann's neighbor told Robert that Ann was experiencing a lot of fatigue and more memory problems.

---

[3] Ann and Ernest moved from Iowa to Alabama in the fall of 2001, and Ann moved back after Ernest's death in 2021.

Around that time, in 2015, Ann signed a restated trust that gave ten percent of its assets to each stepchild "[a]s soon as practicable after [her] death." She appointed Iowa State Bank to replace her as trustee if she was incapacitated and upon her death. She gave Robert her tangible personal property. She also directed her trustee to administer a separate trust for Robert giving him lifetime income in the remaining seventy percent, with her trustee distributing income and principal as needed. Upon Robert's death, the balance of the trust would pass to her seven grandchildren and four step-grandchildren—a one-eleventh share each.

More amendments followed. In 2019, Ann designated Ernest co-trustee. Then in 2021, she added her stepson Benjamin as a co-trustee and as successor agent after Ernest. What's more, in 2020, Ernest added Benjamin to a credit union account that Ernest and Ann held jointly, according to Robert's petition. And Ernest wrote checks to Benjamin and Nathan totaling $9000. After Ernest's death in 2021, Benjamin wrote checks to himself, Nathan, and Melissa, totaling $12,500.

Late that year, Benjamin told Ann's doctor that her dementia had worsened. He and Sherry sought an involuntary guardianship and conservatorship. The court granted their petition on a temporary basis, appointing conservator Erin Droll. Droll's interim report to the court concluded that, given her cognitive limitations, Ann likely did not understand many of her recent financial decisions. Ann also underwent several medical exams in 2022, with doctors noting severe cognitive defects consistent with progressive dementia. Robert asserts her dementia is irreversible and uncurable, and that it will continue to worsen.

In July 2022, Robert filed this petition alleging five counts against the Pooles. First, he argued that they exerted undue influence on Ann, who was

susceptible due to her mental condition. Second, he asserted that Ann lacked testamentary capacity to change the trust. Third, he claimed tortious interference with inheritance against the Pooles for inducing Ann to restate and amend the trust, and for convincing her to change the beneficiaries of the Sun America and the Vanguard IRA accounts. Fourth, he alleged that Ernest and Benjamin, as Ann's agents for her power of attorney, engaged in self-dealing, exerted undue influence, and breached their fiduciary duties. Finally, Robert asked for declaratory judgment finding that changes to the trust were invalid and should be set aside. He claimed that because Ann is incompetent, her trust is now irrevocable.

The Pooles moved to dismiss.[4] The district court denied their motion, reasoning:

> The ultimate issue raised by [Robert's] petition is whether Ann D. Winslow had the testamentary capacity to make changes to her trust after 2013. If she did, [Robert's] interest in the trust would vest only upon the discretionary conduct of Ms. Winslow.
> . . . The facts as pled indicate that as early as 2013, Ms. Winslow began experiencing cognitive issues resulting in memory loss. By 2015, she was "experiencing extraordinary fatigue, and increased cognitive problems, especially relating to her memory." And in 2022, her doctors "suspected Alzheimer's and dementia" and "noted severe cognitive defects." Presumably, these observations are what lead Erin Droll, Ms. Winslow's temporary guardian and conservator, to conclude that Ms. Winslow likely did not understand certain changes she had made to her trust. If the court accepts those facts as true, as it must at this stage, the revocability of the trust, and all the legal issues that come with it (i.e. standing, timing of incapacity, extent of incapacity, etc.) are in play.

(Footnotes omitted).

---

[4] The trustee, Iowa State Bank, answered on behalf of Ann and the trust. It took no position on the action. The Pooles have not yet filed an answer, choosing instead to appeal the dismissal ruling. The supreme court granted interlocutory appeal and stayed the district court proceedings.

The Pooles moved to reconsider. The district court summarily denied that motion.[5] Our supreme court granted the Pooles' application for interlocutory appeal and transferred the case to us.[6]

## II.    Scope and Standard of Review

"We review a district court's ruling on a motion to dismiss for the correction of errors at law." *Miller v. State*, 18 N.W.3d 498, 501 (Iowa 2025) (quoting *Nahas v. Polk Cnty.*, 991 N.W.2d 770, 775 (Iowa 2023)). "In our review, we accept as true the petition's well-pleaded factual allegations, but not its legal conclusions." *Id.* (cleaned up). We also review a challenge to subject matter jurisdiction for legal error. *Roland v. Annett Holdings, Inc.*, 940 N.W.2d 752, 757 (Iowa 2020).

## III.    Discussion

### A. Subject Matter Jurisdiction

First off, the Pooles challenge the district court's subject matter jurisdiction to hear these claims, asserting Robert should have brought them in probate court. They point out that Iowa Code section 633A.6101(1) (2022) provides "[t]he district court *sitting in probate* has exclusive jurisdiction of proceedings" relating to the internal affairs of trusts and other trust challenges. (Emphasis added.) Similarly, Iowa's probate code gives the district court "sitting in probate" jurisdiction over proceedings involving administration of an estate. Iowa Code § 633.10. So the

---

[5] The court said that, after discovery, the Pooles could renew their argument that the trust remains revocable in a motion for summary judgment.

[6] We heard counsel for the parties in oral argument on June 18, 2025. The day before oral arguments, Robert, acting pro se, submitted a "Petition for Appointment of a Receiver" captioned in the district court for Polk County. The seventy-page petition had four exhibits attached. Because these documents are not part of our record on appeal, we do not consider them. *See* Iowa R. App. P. 6.801.

Pooles fault Robert for filing his claims in the district court's general civil docket to skirt the fact that there is no estate. They urge that Robert's claims must be dismissed and renewed in probate court and, what's more, not until Ann has died.

"Subject matter jurisdiction is the power of a court to hear and determine cases of the general class to which the proceedings in question belong . . . ." *De Stefano v. Apts. Downtown, Inc.*, 879 N.W.2d 155, 164 (Iowa 2016) (cleaned up). "Jurisdiction over the subject matter of a claim must be conferred by a constitutional or statutory grant." *Id.*

The district court considering Robert's petition had that statutory grant under chapters 633 and 633A. "The Iowa district court is a court of general jurisdiction" that is "empowered by the Iowa Constitution to hear all cases in law and equity." *Schott v. Schott*, 744 N.W.2d 85, 87 (Iowa 2008). This judge had "the full jurisdiction of the district court, including the respective jurisdictions of district associate judges and magistrates." Iowa Code § 602.6202.

Because the jurisdiction of a district court judge includes the dockets of judicial officers with more limited jurisdiction, it includes the probate court. *See id*. The probate court is only a division of the Iowa district court, created for judicial efficiency.[7] So the district court had subject matter jurisdiction to hear this case.

---

[7] Polk County is unusual in Iowa for having a judge specifically assigned to the probate docket. Otherwise, the district court has general jurisdiction of all matters. *See, e.g.*, *In re Est. of Anders*, 26 N.W.2d 67, 71 (1947) ("Time and again we have pointed out that there is but one court of general jurisdiction in Iowa—the district court. Before it all proceedings come, whether law, equity or probate. Forms of action differ but they are not controlling. Separate dockets are kept for convenience and efficiency, to expedite but not to clog the administration of justice."); *In re Est. of Heaver*, 150 N.W. 698, 700 (1915) ("All proceedings, whether probate, equity, or law, are before the said court. Forms of action only differ, and these are not controlling. They are adopted for purposes of efficiency

## B. Predeath Trust Challenges

Next, the Pooles argue that Robert cannot pursue his claims for undue influence, lack of testamentary capacity, or declaratory judgment because the probate code does not allow predeath trust contests. They note that Iowa Code section 633A.3108 sets a one-year limit after the settlor's death to challenge a revocable trust.[8] They also emphasize that *In re Guardianship of Radda*, 955 N.W.2d 203 (Iowa 2021), "shut the door on predeath will contests when the testator is still alive." The putative beneficiary in that case asserted the testator lacked testamentary capacity while in a voluntary conservatorship so the wills should have been set aside.[9] *Radda*, 955 N.W.2d at 208. The court found the challenger lacked standing because Iowa's "detailed legislative scheme" does not "allow[] an action to set aside a will while the testator is alive." *Id.* at 212–13. Section 633.308 provides, "Any interested person may petition to set aside the probate of a will by filing a written petition in the probate proceedings." But probate proceedings cannot commence until "[a]fter the death of the testator." Iowa Code § 633.290.

---

in, and not as a clog to, the administration of justice. The remedy to which either party is entitled may be awarded in utter disregard of the place on the calendar; the cause may be docketed, whether with the actions at law, suits in equity, or with the estates in probate . . . ." (citations omitted)); *Tucker v. Stewart*, 97 N.W. 148, 148 (1903) ("While proceedings in probate are to be distinguished from others, the court in which they are had is the same.").

[8] The period for filing a contest can be announced in a notice if it is published "within one year of the settlor's death" or, if no notice is published, "no later than one year following the death of the settlor." Iowa Code § 633A.3108.

[9] The court first rejected the challenger's assertion that the testator's placement in a voluntary conservatorship raised a presumption that he lacked testamentary capacity to execute a will. *Radda*, 955 N.W.2d at 210 ("[T]he imposition of a conservatorship over a person's assets is not a determination that the individual lacks testamentary capacity, because the capacity required to manage one's assets is greater than that required to devise them." (citation omitted)).

Why did the legislature decide to defer will contests until after a testator's death? *Radda* listed "the need for finality, prompt and effective estate administration and a final and conclusive distribution." 955 N.W.2d at 213 (cleaned up). The court then pointed to the pitfalls of predeath challenges.

> Although allowing challenges to wills under section 633.637 during the ward's life may avoid some post-death will contests, it might generate unnecessary challenges to wills that are never probated. In our view, it makes more sense to defer challenges to a will to formal probate proceedings after the testator's death, when the rights of all affected parties can be determined and questions of capacity or undue influence can be decided by a jury as the conscience of the community. We see good practical reasons not to stray from the legislature's chosen statutory scheme. Predeath challenges to wills may be a waste of time—the testator might replace the will at issue with a new one, die without property, or the challenger might die before the testator. The testator is entitled to keep the terms of the will confidential before his death; yet a predeath challenge might invade the testator's privacy interest or reveal terms the challenger would accept, making the challenge unnecessary or generating unwanted discord among family members.

*Id.* (footnotes omitted). Thus, the court rejected the challenger's invitation to "create a new, separate mechanism for a predeath will contest." *Id.*

Robert counters that he is not challenging Ann's will. Instead, he argues the Pooles improperly induced her to change her trust and beneficiary designations. He acknowledges that *Radda* extended its rationale to revocable trusts. *See* 955 N.W.2d at 213 n.9 ("[J]ust as will contests can only be brought after the death of the testator, challenges to revocable trusts must wait until after the settlor's death."). But Robert argues his action differs from *Radda* because Ann's trust became irrevocable when she was no longer competent to change it. The probate code requires that "[t]o create, revoke, or modify a revocable trust, the settlor must be competent." Iowa Code § 633A.3101(1). So, Robert reasons that

because Ann is permanently incompetent, the trust is irrevocable. The district court implicitly accepted this reasoning when it found that Robert's claims survived dismissal.

We choose to resolve this appeal without deciding whether a revocable trust becomes irrevocable if the settlor is incompetent. Our focus, instead, is on the question of Robert's standing to bring his claims. Standing to sue means having a "sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy." *Birkhofer ex rel. Johannsen v. Birkhofer*, 610 N.W.2d 844, 847 (Iowa 2000) (citing Black's Law Dictionary 1405 (6th ed.1990)). "Our test for standing is that the complaining party must (1) have a specific, personal, and legal interest in the litigation and (2) be injuriously affected." *Id.* "[A] mere speculative or contingent interest" is not enough. *In re Est. of DeVoss*, 474 N.W.2d 539, 542 (Iowa 1991). For example, in *Birkhofer*, a daughter with "only a statutory intestate interest in her mother's estate that can be eliminated by will or transfer" had no legal interest sufficient to establish standing while the mother was alive. 610 N.W.2d at 847. The asserted interest must be "immediate . . . rather than a contingent interest, which may never vest." *In re Est. of Pearson*, 319 N.W.2d 248, 249–50 (Iowa 1982).

Robert argues that because the restated trust and its amendments "decreased [his] inheritance," he has "a specific, personal and legal interest in the litigation and [an] injury," which Ann cannot alter because of her permanent incapacity. The Pooles counter with several reasons why Ann's inability to change the trust does not create a present legal interest or injury for Robert. Foremost, the 1991 trust contemplates the depletion of the principal. It directs that the trustee

> distribute to me or apply for my benefit such amounts of net income and principal, *even to the extent of exhausting principal*, as the trustee believes desirable from time to time for my health, support in reasonable comfort, best interests, and welfare, considering all the circumstances and factors deemed pertinent by the trustee.

(Emphasis added.) This language, according to the Pooles, demonstrates that Ann didn't intend for anyone to benefit from the trust—other than herself—until after her death, if at all.[10]

The Pooles are correct. Ann directed the trustee to exhaust the principal if needed, leaving the possibility that Robert would receive nothing. Because exhaustion is possible, Robert's interest is not immediate. It is speculative and contingent until Ann dies with assets remaining in her trust. If the trust is empty, Robert will be uninjured by the Pooles' alleged wrongdoing. Nothing will be determined until Ann has died and the will pours the estate assets, if any, into the trust. So even if Ann is permanently incapacitated, Robert has no more than an expected future interest insufficient to create standing. The Pooles also point out that if Robert predeceases Ann, his contingent interest is extinguished.

When we take the facts alleged in the petition as true, Robert does not assert a present interest beyond his expected inheritance. This is not enough to establish standing. He asserts, "Ann's plan that Robert receive all of her estate continued up to and after the time of Ann's marriage to Ernest," after which she included her stepchildren in plans for her "estate upon her death," with Robert's income distributions commencing at the same time. Until the changes, Robert

---

[10] The Pooles also point out that the restated trust includes instructions in the event of Ann's incapacitation which don't include immediate distribution to the contingent beneficiaries. The 1991 trust instrument did not make such provisions.

"expected to inherit from Ann as a sole beneficiary after the death of Ann." Thus, he alleges "[t]he restated trust greatly reduced [his] expected inheritance." The Pooles' tortious interference allegedly "prevented Robert from receiving part of all of the inheritance that he otherwise would have received after the death of Ann." Neither the petition nor the attached exhibits allege that Robert has a present, immediate interest in any of Ann's property. His interest is a future, contingent interest that depends on many factors and cannot be determined before Ann's death, even if the general rules are known, as in the case involving an intestate decedent. *See Birkhofe*r, 610 N.W.2d at 847.

Bottom line, Robert's interest in the trust is not immediate until Ann's death, so he lacks standing to challenge its terms until then.

### C. Tortious Interference with Inheritance

In a separate division of their brief, the Pooles attack Robert's claim for tortious interference with inheritance. They argue that, in *Radda*, the supreme court found "a common law action for tortious interference with an inheritance must be joined with a timely will contest." 955 N.W.2d at 213 (citing *Youngblut v. Youngblut*, 945 N.W.2d 25, 38–40 (Iowa 2020)). Robert responds that *Youngblut* is "only somewhat relevant to this case." And that, by analogy, he has joined his tortious interference claim with his challenge to the validity of the trust amendments and beneficiary designations.

But again, we need not reach the relevance of *Radda* or *Youngblut*. For the same reasons discussed above, Robert lacks standing to bring an action for tortious interference with inheritance before Ann's death.

### D. Breach of Fiduciary Duty and Self-Dealing Claims

Finally, the Pooles contend the court should dismiss Robert's claims of breach of fiduciary duty and self-dealing against Benjamin, named in the power of attorney as Ann's agent. They repeat their argument that Robert has only a future interest and he cannot establish an injury that would confer standing. We agree for the same reasons discussed above. Robert's interest in the trust is too speculative to establish standing to bring these claims against Benjamin.

What's more, Benjamin does not owe fiduciary duties to Robert. *See In re Est. of Crabtree*, 550 N.W.2d 168, 171 (Iowa 1996) (explaining that agent was a fiduciary "required to act in [the principal's] best interests"). That is not to say that Benjamin can freely plunder Ann's assets while Robert watches his expected inheritance dwindle. But it is not Robert who can police the exercise of fiduciary duties. Rather, the trustee, Iowa State Bank, has standing and authority to challenge the agent's actions if they violate his fiduciary duties or involve self-dealing. *See* Iowa Code § 633A.4211 ("A trustee shall take reasonable steps to enforce claims of the trust, to defend claims against the trust, and to defend against actions that may result in a loss to the trust.").

### E. Cash and Retirement Accounts

Finally, the Pooles note that Robert's petition asks to overturn "beneficiary designations on several inter vivos accounts." They argue that like a revocable trust, these accounts remain Ann's assets until her death. Thus, they urge that Robert has no present interest conferring standing. Robert answers: "The reduction of his share in those financial accounts causes him financial harm and Ann is no longer able to change those designations."

As it stands, Robert has not yet realized any financial harm from the beneficiary designations on these accounts. Before Ann's death, he cannot establish an interest sufficient to obtain standing, nor can he state a claim that entitles him to recovery on those accounts.

In sum, even accepting the facts alleged in Robert's petition as true, while Ann is still living, he lacks standing to bring any of his claims against the Pooles.

**REVERSED AND REMANDED FOR DISMISSAL.**