# IN THE COURT OF APPEALS OF IOWA

No. 14-2138
Filed October 28, 2015

KATHY A. SCHINDLER,
     Claimant-Appellant,

vs.

MICHAEL DEAN DRAHOS and JAMES MATTHEW
DRAHOS, FIDUCIARIES OF THE ESTATE OF
DENNIS ALBIN DRAHOS, DECEASED,
     Defendants-Appellees.

_____

Appeal from the Iowa District Court for Linn County, Ian K. Thornhill, Judge.

A plaintiff appeals the probate court's rejection of her subrogation claim.

**AFFIRMED.**

Gregory J. Epping of Terpstra & Epping, Cedar Rapids, for appellant.

Erin R. Nathan, Philip D. Brooks, and Larry G. Gutz of Simmons Perrine Moyer Bergman, P.L.C., Cedar Rapids, for appellees.

Heard by Vogel, P.J., and Vaitheswaran and Bower, JJ.

**VOGEL, Presiding Judge.**

Kathy Schindler appeals the district court's denial of her subrogation claim against the Estate of Dennis Drahos.[1]  She claims the court did not correctly apply the law of subrogation when it denied her claim against some of the assets of the Estate.  We agree with the court's analysis and conclusion that Kathy did not prove she had the right of subrogation, and we therefore affirm the district court's decision.

**I.  Background Facts and Proceedings.**

Kathy first met Dennis at work in the late 1970s—at a business that Dennis would later own.  Their relationship progressed, and they would take trips together.  Kathy described Dennis as her life, both business and personal.  Kathy assisted Dennis in securing credit for his business ventures by giving her personal guarantees.  Dennis Drahos died on January 28, 2013, and his will was admitted to probate March 1, 2013.  Dennis appointed two of his sons, James Drahos and Michael Drahos, to serve as co-executors.  The will devised Dennis's property to his five children in equal shares.  Kathy filed a claim in probate on April 5, 2013, asserting she was the beneficiary of five life insurance policies on Dennis's life that had been assigned to Cedar Rapids Bank & Trust (the Bank) as security for Dennis's debts and those of his company, Timberlake Enterprises, Ltd.  Kathy did not dispute the validity of Dennis's assignment of those policies to

---

[1] The Estate filed a counterclaim against Kathy for slander of title and interference with a prospective economic advantage because Kathy filed a lien against the Estate's real property to secure the claim she made in probate.  The court rejected the counterclaims, finding Kathy did not act with malice when she placed a lien on the property owned by the Estate.  While her subrogation claim was ultimately not successful, the court concluded Kathy was acting reasonably and in good faith.  The Estate does not appeal this ruling of the district court.

the Bank, as she gave her written consent at the time of the assignments and consented to the Bank's request for payment of those policies upon Dennis's death. However, Kathy asserted in her claim in probate that she was "subrogated to all rights of [the Bank] as concerns the estate and/or Timberlake Enterprises, Ltd., including security in and to property of the estate and/or Timberlake Enterprises, Ltd. pledged to [the Bank]" to the extent of the death benefits paid under the life insurance policies. The total amount paid to the Bank from the life insurance policies for Dennis's death was $606,709.53. The Estate disallowed the claim, and Kathy requested a hearing, which took place on May 27, 2014.

District court ruled that Iowa law applied with respect to the allocation of the burden of proof on Kathy's claim. The court determined Kathy needed to prove by "a fair preponderance of the evidence" that she was subrogated to the rights of the Bank. The court concluded that there was nothing in the law or the facts presented to support the conclusion that Kathy had subrogation rights to the Bank's property lien by virtue of being a named beneficiary on the life insurance policies properly assigned to the Bank. The court concluded that to find to the contrary would undermine long-standing Iowa law recognizing the assignability of life insurance policies as consideration for loan contracts. Kathy filed a 1.904(2) motion, asking the district court to enlarge its factual and legal findings. The motion was denied, and Kathy now appeals.

## II. Scope and Standard of Review.

This is an action involving a contested probate claim, and as such, it was tried in probate court as a law action. *See* Iowa Code § 633.33 (2013). Our

review is therefore for correction of errors at law. *In re Estate of Crabtree*, 550 N.W.2d 168, 170 (Iowa 1996). "We are bound by the trial court's findings of fact provided they are supported by substantial evidence." *Id.*

### III. Subrogation of Bank's Rights as a Creditor of Estate.

Our courts have long ago recognized the right to assign a life insurance policy to secure a debt. *See Anderson v. Aetna Life Ins. Co.*, 188 N.W. 883, 884 (Iowa 1922) ("The general rule is that, where one has a valid policy on his own life, made payable to assigns, he may make such disposition of the proceeds of said policy as he sees fit, and can assign the same to one who has no insurable interest in his life, where the assignment is made in good faith and is not a mere subterfuge for the purpose of securing insurance by one without an insurable interest."). Kathy does not seek to alter, set aside, or subordinate any aspect of the assignment of the life insurance proceeds to the Bank. She agreed to the assignment when it was made and consented to the payment of the policy proceeds to the Bank when Dennis died. However, she asserts she is entitled to recover the value of the life insurance proceeds from other assets of the Estate by way of being subrogated to the Bank.

The Bank had a pool of assets that collateralized the loans the Bank made to Dennis, which included the life insurance assignment. Because the Bank chose to collect a portion of the debt from the life insurance proceeds upon Dennis's death, instead of seeking to satisfy Dennis's debt obligation from other estate assets, Kathy asserts she is entitled to seek the amount of money she would have collected from the life insurance policies, but for the Bank's assignment, from the other assets in the collateral pool from which the Bank

could have satisfied the debt. She claims the Estate gained the benefit of the life insurance proceeds that should have gone to her. She seeks a subrogation interest on $606,709.53 of the Estate's assets—the money she lost out on when the Bank used the life insurance proceeds to satisfy some of Dennis's debt obligation upon his death.

Subrogation is a doctrine, grounded in equity, that gives "relief to a person or entity that pays a legal obligation that should have, in good conscience, been satisfied by another." *Allied Mut. Ins. v. Heiken*, 675 N.W.2d 820, 824 (Iowa 2004). The principle is employed to correct or prevent unjust enrichment. *See State ex rel Palmer v. Unisys Corp.*, 637 N.W.2d 142, 156 (Iowa 2001). "Where one person is more fundamentally liable for a debt which another person is obligated to pay, such a person shall not be enriched by escaping the obligation." *Id.*

Kathy concedes there is no Iowa case addressing the specific claim she made in probate court but claims other jurisdictions have recognized a beneficiary's right to subrogation under similar circumstances. *See* J. C. Vance, *Right of Life Insurance Beneficiary Against Estate of Insured Who Used Policy as Collateral*, 91 A.L.R.2d 496 (1963) [hereinafter Vance]; *see also In re Estate of Winstead*, 493 N.E.2d 1183 (Ill. App. Ct. 1986). Even if such a cause of action were available in Iowa, we agree with the district court that Kathy did not satisfy her burden of proof.

As the person bringing the claim in probate, it was Kathy's burden to prove her right to recovery by a preponderance of the evidence.[2] *In re Estate of Hunt*, 129 N.W.2d 618, 623 (Iowa 1964) ("The general rule is that the burden of pleading and proof rest upon the same litigant. He who asserts an issue must prove it."); *Carlson v. Bankers Trust Co.*, 50 N.W.2d 1, 6 (Iowa 1951) ("In such a probate action as this, tried as an ordinary action at law, only a preponderance of evidence is required.").

The law Kathy cites in support of her claim provides,

> Generally, the decedent's intent is the paramount factor in determining whether the beneficiary of an insurance policy on the decedent's life should be subrogated to the rights which a debtor-assignee who collected the proceeds of the policy would have had against the decedent's estate but for the availability of the insurance proceeds.

*Winstead*, 493 N.E.2d at 1188; *see also* Vance, at § 2 ("It is apparent in almost all the decisions that the courts are concerned with ascertaining, from all the facts and circumstances of the particular case, what the insured wished to be done with respect to the payment of his debt, and, if possible, to give effect to his desires.").

In support of her assertion that Dennis did not intend for the debt to be paid from the life insurance proceeds, Kathy points to the testimony of Gary Becker, the Bank's senior vice president relationship manager, who stated when Dennis executed the promissory notes at issue he intended the primary source of

---

[2] While the district court noted the allocation of the burden of proof was a contested issue at the hearing, Kathy concedes on appeal that she held the burden of proof for her claim.

repayment would be the lease income on the commercial building and the sale of the residential real estate lots.[3]

Dennis died of cancer approximately eight months after being diagnosed. Kathy testified Dennis made it clear to her as he was becoming ill from cancer that she was the beneficiary of his life insurance policies. However, testimony at the hearing established Dennis had a conversation with Gary Becker six to eight months prior to Dennis's death regarding Dennis's awareness of the life insurance policies. Gary testified it was his understanding Dennis viewed the insurance proceeds "as a way to smooth any estate issues when it came to— when it came to the development ground." This conversation indicated to Gary that Dennis knew the life insurance would be applied to the loans. Dennis "was trying to make sure that he didn't leave any bigger mess than he could on the estate." Gary inferred from Dennis's comments that his priority was to use the life insurance proceeds to satisfy his debts as Dennis believed that was one way to get the loans repaid quicker and get the Estate "out from under those responsibilities."

Dennis's son, James, also testified to a conversation he had with Dennis after the cancer diagnosis. Dennis was concerned about the amount of debt he had and the burden that would place on his children. Dennis had a meeting in his home where he discussed his finances with James, Ron Landergott—

---

[3] Counsel for Kathy asserted at oral argument that Dennis's death did not result in a default of the loan; thus, the Bank was not entitled to accelerate the payment on that loan by collecting the entirety of the life insurance proceeds. Upon our review of the record, we do note that one of the promissory notes at issue does define a "default event" to include the death of the borrower. We also note that the "cross collateral and cross default agreement," executed by Dennis in September 2011, states that "any default by any of the Borrowers in the payment or performance under any of the Agreements shall constitute a default under each of the Agreements."

Dennis's insurance agent, Randy Nazette—Dennis's attorney, and Kathy. During the meeting, Ron specifically addressed the life insurance policies and indicated those would be paid to the Bank. Ron advised that if Dennis wanted any money to go to Kathy other arrangements would need to be made. It was James's understanding Dennis wanted the life insurance proceeds to go toward the debt and Kathy was "well taken care of." The debt that was not satisfied by the life insurance proceeds would need be paid from other assets such as the sale of the residential lots Dennis owned. Another of Dennis's sons, Michael, also had a conversation with Dennis about the life insurance proceeds. It was Michael's understanding Dennis wished for the life insurance proceeds to be used to pay off as much of the debt to the Bank as possible and the rest of the debt would be paid from lot sales.

While Kathy asserts it was not Dennis's intent that the life insurance proceeds be used to discharge the debt owed to the Bank, she has little evidence to support such a conclusion. We therefore find substantial evidence supports the trial court's decision that Kathy failed to establish by a preponderance of the evidence that it was Dennis's intent she be subrogated to the Bank's rights against the property of the Estate.[4] We affirm the district court's judgment.

**AFFIRMED.**

---

[4] Because we agree with the district court Kathy did not satisfy her burden to prove her entitlement to subrogation against the assets the Bank holds as collateral for Dennis's loans, Kathy likewise has no claim to a lien on the property of the Estate.