# IN THE COURT OF APPEALS OF IOWA

No. 24-0457
Filed July 2, 2025

ANTHONY WENCK, KRIS McDONALD, BRENDA HOLT, and R.J. WENCK TRUST,
    Plaintiffs-Appellants,

vs.

AMERICAN STATE BANK,
    Defendant-Appellee.
_____

Appeal from the Iowa District Court for Madison County, Thomas P. Murphy, Judge.

The plaintiffs appeal from the district court's grant of summary judgment in favor of the defendant.  **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.**

Billy J. Mallory and Trevor A. Jordison of Mallory Law, West Des Moines, for appellants Anthony Wenck, Kris McDonald, and Brenda Holt.

Tyler M. Smith of Smith Law Firm, PLC, Altoona, for appellant R.J. Wenck Trust.

Verle W. Norris, Corydon, for appellee.

Considered without oral argument by Greer, P.J., and Ahlers and Badding, JJ.

**AHLERS, Judge.**

Lanny Wenck first met Bradley Allen when Allen was a young boy. He gave Allen a job when Allen turned fifteen. Allen then worked for Wenck over the next several decades. In 2011, Wenck gifted all of his stock in two of his businesses—Lanny's Auto Company, Inc. and Lanny's Finance Company Inc.—to Allen.

In 2016, Wenck was diagnosed with cancer. In January 2017, Allen went into the local bank, American State Bank, and told bank staff that Wenck wished to add Allen to Wenck's bank accounts. An employee of the bank knew Wenck was "very ill," so she called Wenck's personal cell phone to ask for authority to add Allen to the accounts rather than having Wenck authorize the change to his accounts in person. On the phone call, the employee identified five accounts purportedly owned by Wenck and asked if he wanted to add Allen to all the accounts. They did not discuss details of how Wenck wanted Allen added to the accounts, such as a signatory, joint owner with rights of survivorship, or joint owner as tenants in common. Two of the accounts were consumer accounts that Wenck originally held with his deceased wife, and the other three were commercial accounts that listed him as well as either Lanny's Auto Company or Lanny's Finance as owners. According to the bank employee, Wenck said he wanted Allen added to all five accounts. The bank then changed all five accounts to list Allen as an owner.

Wenck died about two weeks later. Wenck's children eventually discovered the change to the bank accounts, including the fact that Allen had added his wife as a signatory to one of the accounts. One of Wenck's children, Anthony Wenck, brought this action against Allen, Allen's wife, and American State Bank alleging,

among other claims, breach of contract by the bank and seeking declaratory judgment to determine the rights of the parties to each account and a determination that the accounts belong to Wenck's estate.

Eventually, all beneficiaries of Wenck's estate were added as plaintiffs.[1] They reached a settlement agreement with the Allens and dismissed their claims against them, leaving only the bank as a defendant. The bank filed a counterclaim seeking declaratory judgment regarding ownership of the bank accounts. The beneficiaries and the bank filed competing motions for summary judgment.

The district court granted summary judgment to the bank, concluding all accounts belonged to Allen. The beneficiaries appeal. They contend the district court erred in (1) concluding that the consumer accounts were orally amended to add Allen as an account owner, (2) ruling that adding a new owner to the consumer accounts transformed them into joint accounts with rights of survivorship, (3) finding that Allen owned the business accounts, and (4) and denying the beneficiaries' partial motion for summary judgment.[2]

We review the district court's grant of summary judgment for correction of errors at law. *Summit Carbon Sols., LLC v. Kasischke*, 14 N.W.3d 119, 126 (Iowa 2024). Summary judgment is only appropriate if the moving party establishes there

---

[1] Wenck's estate assigned any of its claims to the beneficiaries.

[2] The R.J. Wenck Trust, one of the beneficiaries, filed a separate appellate brief. Our summary of the major claims raised by the beneficiaries reflects claims raised in both appellate briefs filed by the beneficiaries.

We note the argument section of the other beneficiaries' appellate brief attempts to "restate and incorporate by reference" sections of the brief filed by the R.J. Wenck Trust. That is not permitted under our rules of appellate procedure. Iowa R. App. P. 6.903(2)(a)(8)(3) ("No authorities or argument may be incorporated into the brief by reference to another document.").

is no genuine issue of material fact and it is entitled to judgment as a matter of law. *Penny v. City of Winterset*, 999 N.W.2d 650, 652 (Iowa 2023). Material facts are those that affect the outcome of the suit, and a fact issue "is genuine if the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *In re Est. of Franken*, 944 N.W.2d 853, 858 (Iowa 2020) (cleaned up). We review the record in the light most favorable to the nonmoving party and make on their behalf all "legitimate inference[s] that can be reasonably deduced from the record." *Homeland Energy Sols., LLC v. Retterath*, 938 N.W.2d 664, 683 (Iowa 2020) (quoting *Phillips v. Covenant Clinic*, 625 N.W.2d 714, 717–18 (Iowa 2001)).

Rather than parsing each of the beneficiaries' claims separately, we elect to address them as a whole. In doing so, we consider the entire summary judgment record and reject the beneficiaries' contention that the parol evidence rule prohibits consideration of any evidence outside the four corners of the bank account agreements executed when the accounts were originally established. That is because the parol evidence rule does not apply to any negotiations or agreements occurring subsequent to the original agreement. *See Garland v. Branstad*, 648 N.W.2d 65, 69 (Iowa 2002). Following our review of the summary judgment record, we conclude there are questions of material fact that prevent an award of summary judgment to either party as to the consumer accounts but affirm the grant of summary judgment with respect to the commercial accounts.

As to the two consumer accounts Wenck originally jointly held with his wife, the account agreements state "[t]hese terms govern the operation of this account unless varied or supplemented in writing." The beneficiaries rely on this language to argue that changes to all terms governing the accounts, including ownership of

the accounts, must be made in writing so Allen could not be added as an owner without Wenck's written approval. The account agreements do not define what constitutes the "terms" of the agreements. The district court concluded that the reference to "[t]hese terms" means only the boilerplate fine print contained on the second page of each agreement because the "[t]hese terms" language appears as part of the fine print at the top of page two of each account agreement. So the district court concluded the "terms" that require any modifications or variations to be in writing refer only to fine print, not the individual details found on the first page of each account agreement, which details include ownership information.

The district court reached that conclusion, but we do not. To begin, there is nothing on the second page of the account agreement that suggests the terms of the agreement do not include the ownership terms. In fact, the ownership terms may be the most important term of the account agreement. Second, "[i]nterpretation of a contract is a legal issue unless the interpretation of the contract depends on extrinsic evidence." *Pillsbury Co., Inc. v. Wells Dairy, Inc.*, 752 N.W.2d 430, 435 (Iowa 2008); *see also Harper v. Kaczor*, No. 10-1833, 2011 WL 3925435, at *6 (Iowa Ct. App. Sep. 8, 2011) ("When, as here, the interpretation of a contract depends upon the credibility of extrinsic evidence, the question of interpretation should be determined by the finder of fact."). Additionally, even if facts are undisputed, "summary judgment is not proper if reasonable minds could draw different inferences from them and thereby reach different conclusions." *Morris v. Steffes Group, Inc.*, 924 N.W.2d 491, 496 (Iowa 2019). The record shows that, at a minimum, there is a factual dispute as to whether ownership is a term of the account agreement, the changing of which would require written authorization.

When Allen came into the bank to ask to be added to Wenck's accounts, a bank employee completed a "Request for Change" form for each account that included a signature line acknowledging that the signer was authorizing "American State Bank to change the *terms* of" the account. (Emphasis added.) At the very least, this generates a fact question as to whether the bank treated a change in ownership as a change in account terms—a change that the agreement requires to be in writing.[3]

Additionally, even if a change in ownership was not a change in contract terms requiring written authorization by Wenck, there are questions of material fact as to whether Wenck orally agreed to add Allen as an owner to his consumer accounts and what the form of ownership would be. In a deposition, Allen agreed that when he went to the bank, it was not his expectation that he would be added to consumer accounts—his intent in going to the bank was to ensure he was listed as an owner on the business accounts. A factual dispute exists as to whether Wenck's alleged direction to Allen to go to the bank for the purpose of being added as an owner to bank accounts was limited to the business accounts or whether the direction included Wenck's consumer accounts. Further, the bank employees who

---

[3] The bank highlights the fact that Allen's signature appears on the accounts' signature cards, which a bank employee explained typically suggests the person is already an account owner. It claims this fact shows Allen was already an owner of the accounts, his 2017 addition to the accounts was merely duplicative, and he had authority to add himself to the accounts through the "Request for Change" form. But Allen's signatures on the signature cards are undated (aside from where he is listed as a signer in another area of the signature cards), and the bank provides no evidence that Wenck added Allen as an owner to the accounts prior to January 2017. So making an inference in favor of the beneficiaries as the parties resisting summary judgment, we infer that Allen signed the signature cards when the bank added him to the accounts in 2017.

talked to Wenck on the phone never got any clarification as to how Wenck wanted Allen to be added to the consumer accounts, which is an important detail. While the consumer accounts were joint accounts with rights of survivorship when held between Wenck and his wife, once she passed away, the accounts belonged only to Wenck individually. The addition of Allen to the accounts as an owner would once again make them joint accounts, but nothing in the accounts' terms required the accounts to necessarily revert into joint accounts with rights of survivorship.

In short, there are unanswered questions that preclude a grant of summary judgment to either party regarding the consumer accounts. Resolution of those disputes will need to be resolved by trial.

As to the business accounts (the accounts ending in 084, 415, and 606), the district court concluded that "[w]hen [Wenck] gave [Allen] the businesses, [Wenck] gave the business accounts to [Allen.]" We view this as reasoning that the accounts are components of the businesses, which are now owned by Allen, meaning Allen owns the accounts. The beneficiaries challenge this conclusion. They contend that "[Wenck] retained ownership and control of the business bank accounts held in his name at [the bank]." They reason that in 2011 Wenck intended to "gift" the businesses to Allen to be effective at a future point in time, question whether that gift was ever completed, and claim there are material fact questions as to whether Wenck ever divested himself of dominion and control over the businesses to complete the gift. *See In re Est. of Crabtree*, 550 N.W.2d 168, 170 (Iowa 1996). They point to Wenck's continued involvement in the businesses, citing Allen's own deposition testimony that Wenck was "still running the company" even after Wenck legally transferred ownership of the companies to Allen. The

beneficiaries describe Allen as "a paper owner" and Wenck as "the actual owner" and urge the matter proceed to trial to determine what classification of owner wins.

But the beneficiaries focus on facts that are not material. It is undisputed that Wenck gifted the businesses to Allen and the transfer of ownership of those businesses was complete in 2011. Any continued functional control that Wenck exerted over the companies was necessarily done with Allen's consent. As the sole shareholder of both businesses following the 2011 gift, Allen had actual dominion and control over them. As such, the record contains no disputed material fact as to whether Wenck completed the gift of the two companies to Allen, meaning Allen owned the companies, which included the three business accounts at issue. The district court properly granted summary judgment to the bank as to the three business accounts.

Due to the factual disputes surrounding ownership of the two consumer accounts, we affirm the district court's denial of the plaintiffs' motion for partial summary judgment, but we reverse the district court's grant of summary judgment in favor of the bank.[4] We remand for further proceedings as to ownership of the consumer accounts. With respect to the three commercial accounts, we affirm the grant of summary judgment in favor of the bank. Costs of appeal shall be assessed seventy-five percent to the bank and twenty-five percent to the beneficiaries.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.**

Badding, J., concurs; Greer, P.J., specially concurring.

---

[4] To the extent that the bank asks us to affirm on an alternative basis under Iowa Code sections 524.805(8) and 524.806 (2018), we conclude that these Code sections do not bar the beneficiaries' claims as the bank suggests.

**GREER, Presiding Judge** (specially concurring).

Shortly after his sister died and after getting a cancer treatment, Lanny Wenck directed Bradley Allen to go to American State Bank to tidy up his affairs. As described by the bank employee, Julie Fritz, Lanny wanted Allen to be added as an owner on all of Lanny's accounts. As the majority notes, the company accounts, in the name of Lanny's companies, had already been transferred to Allen in 2011—Lanny's direction was not required but would have eased his mind that he tidied up his affairs. And Allen was already listed on the personal consumer accounts as an owner, so direction was unnecessary in that respect too. Given this record, we are unsure about Lanny's sophistication related to banking knowledge. But what is clear and undisputed is that Lanny made the request that Allen own all of Lanny's five accounts. So I disagree with the majority opinion that there are "questions of material fact as to whether [Lanny] orally agreed to add Allen as an owner to [Lanny's] consumer accounts." The unrebutted evidence suggests otherwise.

But unlike the majority, I think the record leaves a question that on the face of the pleadings requires additional development beyond the summary judgment stage. The district court should hear evidence to resolve whether Allen was an owner before November 2017 and, like with the business accounts, whether Lanny was just covering his bases or if he was not entirely sure if the ownership change had in fact already been accomplished. So, along with how the consumer agreements terms were to be applied when ownership is modified, I would add to the list of issues to be considered on remand the question of whether Allen had been added as an owner before January 3, 2017, when Lanny provided his clear

directions to the bank staff. This confusion requires resolution by testimony and factfinding—not summary disposition. The consumer account agreement was produced during discovery, and in the section involving ownership and authorized signers, the two accounts looked like this:

ACCOUNT OWNER NAME & ADDRESS
Lanny L. Wenck
Sandy L. Wenck
2444½ 124 W. Hwy 92
Winterset, IA 50273

ACCOUNT NUMBER _____ -568
NUMBER OF SIGNATURES REQUIRED FOR WITHDRAWAL __ 1
☐ This is a Temporary account agreement.

SIGNATURE(S) - THE UNDERSIGNED AGREE(S) TO THE TERMS STATED ON PAGES 1 AND 2 OF THIS AGREEMENT, AND ACKNOWLEDGE(S) RECEIPT OF A COMPLETED COPY ON TODAY'S DATE. THE UNDERSIGNED ALSO ACKNOWLEDGE(S) RECEIPT OF A COPY OF AND AGREE(S) TO THE TERMS OF THE FOLLOWING DISCLOSURE(S):

☒ Funds Availability
☒ Electronic Funds Transfer
☐
☒ Truth in Savings
☒ Privacy

(1) x _Lanny L. Wenck_
(2) x _Sandy L. Wenck_
(3) x _Bradley Mall_
(4) x

☐ AUTHORIZED SIGNER (name)
Individual Accounts Only
Signature(s) _Bradley Mall_ Identifying Info. _added_
x _12-22-10_
x

BACKUP WITHHOLDING CERTIFICATIONS

TIN: _____

☐ TAXPAYER I.D. NUMBER - The Taxpayer Identification Number shown above (TIN) is my correct taxpayer identification number.

☐ BACKUP WITHHOLDING - I am not subject to backup withholding either because I have not been notified that I am subject to backup withholding as a result of a failure to report all interest or dividends, or the Internal Revenue Service has notified me that I am no longer subject to backup withholding.

☐ EXEMPT RECIPIENTS - I am an exempt recipient under the Internal Revenue Service Regulations.
SIGNATURE - I certify under penalties of perjury the statements checked in this section and that I am a U.S. person (including a U.S. resident alien).
x _Lanny L. Wenck_ _8-13-02_
(Date)

Express™ © 1983, 1992 Bankers Systems, Inc., St. Cloud, MN Form AA-C-IA 12/30/2000
(page 1 of 2)

With that document in hand, the bank corporate representative testified in her deposition as follows:

> Q. Do you know anywhere in the consumer account agreements that we've talked about where it's required that Lanny

Wenck is required to give written authorization to add Brad Allen as an owner of those consumer accounts?  A. Not to my knowledge.

Q. Did American State Bank consider Brad Allen to be an owner or co-owner of accounts, these individual consumer accounts, [XXXXX]499 and   [XXXXX]568 as of January 3, 2017, and afterwards?  A. I do not know the timing of all of this.  It appears that he is an owner by looking at the signature card and then by the change form.

Q. For purposes of the bank, was there anything more that either Lanny or Brad had to do to get that ownership changed? A. No.

On November 3, Allen first approached loan officer Connie Siefkas and told her that Lanny wished for Allen to be added to Lanny's accounts.  Both Siefkas and Fritz knew Lanny as he was a frequent bank customer over the years.  Knowing that Lanny was very ill, and because she had his personal cell phone number, Siefkas called Lanny to verify to which accounts he wanted to add Allen and they went through each specific account together.  Again, Lanny confirmed his wishes that Allen would be added to all his accounts.  Siefkas did not pull up the specific account agreements during that interaction.  But when asked about the consumer account agreements, Siefkas noted that the "practice" was to add account owners in the section where the signatures of Lanny, Sandy, and Allen appeared.  She testified about the form as follows:

Q. Where in this document does it say that you are an owner if you sign on 1, 2, 3 or 4?  A. I—I do not know where it says that.  I know practice, if someone were to come into the bank and want to be added, this is where I have them sign.

Q. And is that because if they sign there they have the authority to transact business on the account?  A. They are signing as an owner of the account.

After Siefkas turned over the project to the account manager, Fritz had a fifteen-minute phone call with Lanny where he confirmed, "Yes, I want [Allen] as owner" as to each of the five accounts Lanny had at the bank.  And when referring

to the consumer accounts, Fritz testified at her deposition that "[Allen] already at some time prior to January 3rd, 2017, signed as owner of [consumer account 499]," but that she did not know when. She indicated she was just trying to make sure Lanny's wishes were fulfilled even it the actions were "superfluous or unnecessary." Fritz further testified:

> Q. And when you're calling Lanny on January 3rd of 2017, did you pay attention to [accounts 499 and 568]? You said you pulled them to make a determination as to who the account owners actually were at that time? A. No.
> Q. All right. And so, as you've testified just a moment ago . . . as you look here today, you see that, in fact, Brad Allen was an owner, as shown in Exhibit L, because he'd signed the account? Was that your testimony? . . . A. Yes.
> Q. And so if Brad Allen was already an owner on these accounts—and I think you testified that these were signed when you looked at them; correct? A. Correct.
> Q. —was it necessary for you to actually complete the request for change on January 3, 2017, Exhibit 202? A. No.

But despite that clear testimony, there are parts of the Fritz deposition that are not so clear on this point. So, in my view, the district court should be charged to definitively determine if there was a gift of the accounts; if not, who owns the accounts; and then, how the accounts were to have been held at the time of Lanny's death. Once those facts are determined, the question is whether Iowa Code sections 524.805(8) and 524.806 (2018) apply to the analysis. So, while I agree that the case should be remanded, I would limit the questions to the application of the consumer account agreement only after, if needed for the resolution, the questions about previous ownership is answered.